COMMONWEALTH vs. DONALD PERKINS.

No. 94-P-845.

Norfolk. October 10, 1995. - December 29, 1995.

Present: ARMSTRONG, PORADA, & LENK, JJ.

*Practice, Criminal*, Instructions to jury, Judicial discretion, Cross-examination by prosecutor, Assistance of counsel. *Witness*, Child, Credibility, Expert, Impeachment, Cross-examination. *Evidence*, Expert opinion, Hypothetical question, Credibility of witness.

At the trial of indictments for sexual abuse of children, the judge did not abuse her discretion in refusing to instruct the jury as requested by the defendant with respect to the credibility of the child witnesses. [579-581]

At the trial of indictments for sexual abuse of children, the prosecutor's use in cross-examination of the defendant's expert witness's statements, published in a magazine article, that appeared to endorse pedophilia was proper as shedding light on the expert's credentials and objectivity. [581-582]

At the trial of indictments for sexual abuse of three children, testimony of the Commonwealth's expert witnesses in response to hypothetical questions that mirrored the underlying facts of the case amounted to an improper assessment of the credibility of the child witnesses and its admission in evidence was error [582-584]; where credibility was the main issue at trial and the evidence against the defendant was not particularly strong, the error created a substantial risk of a miscarriage of justice and a new trial was required [584-585].

INDICTMENTS found and returned in the Superior Court Department on April 1, 1992.

The cases were tried before *Elizabeth Butler*, J.

*Carlo Obligato*, Committee for Public Counsel Services, for the defendant.

*John P. Corbett*, Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted by a jury in the Superior Court of three acts of forcible rape of a child, three

acts of indecent assault and battery on a child, and one act of threat to kill. On appeal, he claims reversible error in the judge's denial of his requested instructions concerning the credibility of a child's testimony, in the prosecution's impeachment of a defense expert, and in the Commonwealth's use of expert testimony, which he argues assessed the credibility of the children's claims of sexual abuse. We reverse.

We summarize the evidence. In the summer of 1991, the three complaining witnesses — Heather, Tom and Anthony, ranging in age from six to seven years — were all neighborhood playmates of the defendant's four year old daughter. During that summer, the mothers of Tom and Heather noticed that their children were experiencing behavioral problems which the children had not previously exhibited. Tom and Heather also complained of genital irritation and, in response to questioning by their mothers, identified their fellow playmate, Anthony, as the person responsible for the genital touching. Their parents reported this information to the police, who questioned the children. The children were then examined at Children's Hospital, where they were also questioned by hospital personnel about the touchings. The children again affirmed that the perpetrator of the abuse was their playmate Anthony and denied any adult involvement. Several weeks later when the defendant and his family moved from the neighborhood, Tom told his mother that the defendant and his wife had been doing bad things to him. Tom, Heather and Anthony underwent further questioning by their parents and the police and in response stated that the defendant and his wife had committed sexual acts upon them.

All three children testified at trial as to the acts performed upon them by the defendant. Tom stated that five acts of anal intercourse were performed in the defendant's front yard during the day and that the defendant's wife and two other adults living in the defendant's house had also performed sexual acts upon him. Heather testified that the defendant had placed a stick in her rectum and fondled her. Anthony said that the defendant had committed anal inter-

course upon him in the defendant's back yard and claimed that the defendant told him he would kill him if he told anyone. Anthony also admitted that he had engaged in sexual acts with Tom and Heather.

The children's mothers and a Quincy police officer testified as fresh complaint witnesses for the Commonwealth and reaffirmed the respective complaints of sexual abuse made by the children. In addition, the Commonwealth presented the testimony of two experts, Dr. Renee Brant, a child psychiatrist, and Dr. Jan Paradise, a pediatrician. Neither doctor had treated the children in this case. Dr. Brant began her testimony by outlining the behavioral characteristics of sexually abused children and then responded to a series of hypothetical questions based on the complainants' behavior in which she opined that delay in disclosure, incremental disclosure, a willingness to return to the scene of alleged abuse and recurring nightmares were not inconsistent with sexual abuse. She also opined that it was possible for sexual abuse to take place in a semipublic or public area and that it was not inconsistent with sexual abuse that different victims might report different means of abuse used by the same perpetrator. Dr. Paradise testified that she had examined each child's hospital records and opined that the lack of a finding of physical injury to the genital area or anal openings of each child was not inconsistent with their complaints of sexual abuse.

The defendant denied that he had ever engaged in any form of sexual contact with the children. His testimony was followed by the defense's expert witness, Dr. Underwager, a clinical psychologist, who testified that children were more suggestible than adults and that repeated and suggestive questioning of children by adults could result in responses from the children which were not necessarily true but rather reflected the perceived expectations of the adult authority figure asking the questions.

We now address the defendant's claims of error.

1. *Instructions on child's credibility.* The defendant argues that the judge should have given his requested instruction on

the assessment of a child's credibility. In particular, he argues that the judge should have informed the jury that children are more suggestible than adults and that the jury could consider whether questions which suggest the answers may or may not have affected the testimony or memory of the child witnesses in this case.

A trial judge retains discretion to determine whether a special instruction on the assessment of the credibility of a child witness is required, and, if so, the content of that instruction. *Commonwealth* v. *Avery*, 14 Mass. App. Ct. 137, 141-143 (1982). Here, the judge elected to give a special instruction on the assessment of the credibility of a child witness.[1] Her refusal to include the specific language requested by the defendant did not amount to an abuse of discretion given the state of the evidence in this case.

Whether the complaints of the children against the defendant were spontaneous revelations delivered in bits and pieces over a period of time or were the product of repeated and leading questions posed to them by successive adults was a factual issue to be determined by the jury. The Commonwealth's and defendant's experts gave conflicting testimony relating to this issue. Dr. Brant testified that whether a leading question from an adult authority figure could affect a child's response would depend on a number of specific variables. She opined that it would be highly unusual for a child to respond affirmatively to a leading question based on whether someone had placed an object in his or her anal

---

[1]After giving a general instruction on the determination of the credibility of a witness, the judge instructed the jury as follows: "With respect to a child witness, jurors, you should apply the same analysis, bearing in mind, of course, the age and developmental stage of the child who is appearing before you. As with any witness, you may consider the . . . degree of intelligence that the witness appears to show, the witness'[s] ability to recall and remember, the witness'[s] opportunity to observe, if the witness is testifying about something which he or she saw with his or her own eyes.

"With a child there is no limit on the age at which a child may come into court and testify. You should take into consideration the child's developmental stage, the child's age, and the way the child testifies in determining the truth or . . . lack of truth of the child's testimony, the way you would with any witness, a child or adult."

opening because that experience would be very foreign to him or her. Dr. Underwager, on the other hand, opined that children are more suggestible than adults and that the use of leading questions would affect their responses and result in an increasing amount of error. Accordingly, the judge properly refused to give an instruction that may have created an imbalance and been viewed as the judge's belief or disbelief in a given witness. See *Commonwealth* v. *A Juvenile*, 21 Mass. App. Ct. 121, 125 (1985).

2. *Impeachment of defendant's expert.* The defendant claims that his expert was impermissibly impeached by statements made by the expert in a magazine article published in Paidika, an Amsterdam pedophilia journal, in which he appeared to endorse pedophilia as an acceptable and reasonable lifestyle. The defendant argues that the material was irrelevant and highly prejudicial, and that defense counsel was ineffective in failing to object to the evidence or to move for a mistrial. The defendant also argues that the judge erred in failing to intervene and truncate the cross-examination sua sponte.

We first address whether the prosecution's use of the defendant's expert's statements in the Paidika article was an improper form of impeachment. Cross-examination of a witness to demonstrate his bias or interest is a matter of right. *Commonwealth* v. *Aguiar*, 400 Mass. 508, 513 (1987). An expert witness is not immune from such examination. *Commonwealth* v. *Amaral*, 389 Mass. 184, 192 & n.11 (1983). If there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into a subject that could show bias or prejudice on the part of the witness. *Commonwealth* v. *Aguiar, supra. Commonwealth* v. *Bui*, 419 Mass. 392, 400 (1995). However, cross-examination is subject to some limitation. *Commonwealth* v. *Franklin*, 376 Mass. 885, 904 (1978).

Here, the defendant argues that his expert's opinions expressed in the Paidika article had minimal relevance, and thus, the prosecutor's intended purpose in exposing them was to prejudice the jury against Dr. Underwager and the de-

fendant. Given the fact that Dr. Brant and Dr. Underwager gave somewhat divergent views on the effect that repeated, leading questions would have on a child's memory and a child's response to such questioning, it was important for the jury to assess the credibility of both witnesses. We therefore conclude that it was proper for the prosecution to show that Dr. Underwager held views which could be used to shed light on his credentials as an expert and his objectivity in cases involving the sexual abuse of children. This is not a case, as the defendant contends, where the witness's views were unrelated to his credibility, see *Commonwealth* v. *Mahdi*, 388 Mass. 679, 691-693 (1983) (defendant's religious tenets had no probative value on issues on trial), or a case where the admission of certain evidence would lead the jury to attribute to the defendant a predisposition to commit the crime, see *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 26 (1990).

Because we conclude that the prosecutor did not err in her use of this article to cross-examine Dr. Underwager, the defendant's claims that his trial counsel's failure to object or move for a mistrial denied him effective representation or that the trial judge erred when she failed to intervene and truncate this cross-examination must fail.[2]

3. *Expert testimony.* The defendant argues that the testimony of the Commonwealth's expert witnesses impermissibly intruded on the jury's function of assessing the credibility of the children in this case. The law is well settled that an expert witness may testify as to the general behavioral characteristics of sexually abused children but may not refer or compare the child witness with those general characteristics. *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 (1994). *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 759 (1994). *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 147 (1994). Here, after testifying as to the general characteristics of sexually abused children and the methodology of interrogating

---

[2]The defendant also claims that the prosecutor was guilty of misconduct in failing to disclose the impeachment evidence to the defendant prior to its use. This argument lacks merit, since there was no duty to disclose material which did not exculpate the defendant.

children relative to allegations of child abuse, Dr. Brant was asked a series of hypothetical questions which sought her opinion on whether certain behavior of three children ranging in age six to seven who had been abused by a neighborhood adult couple with whose daughter they enjoyed a friendship and at whose home they played on a regular basis was consistent or inconsistent with sexual abuse. The behavior of the children in each of the hypothetical questions matched that of one or more of the children in this case. In response, Dr. Brant testified that delay in disclosure, incremental disclosure, lack of hesitation to return to the scene of the abuse, and recurring nightmares were in each case not inconsistent with sexual abuse. She also opined in response to hypotheticals that it was not inconsistent with child abuse that the act of abuse occurred in a public or semi-public place or that the same perpetrator used different means of abuse on different victims.

Similarly, the prosecution sought to elicit from Dr. Paradise her opinion in response to hypothetical questions whether each of the children's complaints of abuse was consistent with the results of medical examinations performed by hospital personnel pertaining to those allegations. In each case, the doctor responded that there was nothing in the hospital records which was inconsistent with the child's complaint of sexual abuse. She also opined that absence of physical injuries in the hospital records of the children was not inconsistent with sexual abuse.

While neither doctor gave an express opinion that the children were sexually abused, nor assessed the accuracy of the children's complaints, we conclude that their testimony, based on questions whose components mirrored the underlying facts of the case, would inescapably have the same impact on the jury as a direct reference to and comparison with the child witnesses in the case.[3] *Commonwealth* v. *Trow-*

---

[3]The following hypothetical question and answer illustrates the problem:
Q.: "I would ask you to assume these facts for this particular question.
"I ask you to assume that three children between the ages of 6 and 7 were sexually abused by an adult neighbor couple with whose daughter

*bridge*, 419 Mass. at 759. *Commonwealth v. Swain*, 36 Mass. App. Ct. 433, 445 n.14 (1994). Cf. *Commonwealth* v. *Ianello*, 401 Mass. 197, 199-203 (1987). As such, their testimony in response to these questions so closely approached an assessment of the credibility of each witness that it was tantamount to an endorsement of the credibility of the complaining child witness. *Id.* Accordingly, its admission was error.

The defendant's trial counsel, however, with one exception made no objection to the hypothetical questions and answers posed and given by the two experts. We must therefore decide whether the admission of this evidence constituted a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Although the

---

they enjoyed a friendship, and at whose home they played on a regular basis.

"I would ask you to further assume while each child discloses sexual abuse by those adult neighbors, each child bases different aspects of abuse within their disclosure. One child discloses that he was anally penetrated. Another child disclosed that she was orally penetrated. And I would ask you whether those differing reports, do you have an opinion, based on those hypothetical facts, whether those differing reports would be inconsistent with child sexual abuse?"

A.: "I do."

Q.: "And what would that opinion be?"

A.: "It would not be inconsistent."

Q.: "And why is that, Doctor?"

A.: "Sexual abuse of children can involve oral penetration, can involve anal penetration. What is done to one child isn't necessarily done to another child. Even if children have had similar and varying experience, what one child chooses to tell you about might be different than what another child. So even if each child had precisely the same experience, what a child would select from that to tell someone might be somewhat different. It wouldn't be as if one would be an exact duplicate of another. Given the fact that there may have been repeated experiences, and experiences of different sorts and types, involving different kinds and forms of abuse, what the children experience may not have been exactly alike, and the children may be representing different kind of abuse that they experienced. I said even if they all had the same kind of abuse, they might choose from one or another either part of these bits and pieces. They wouldn't necessarily tell the whole story."

Q.: "Would it be fair to say, Doctor, different children might have different perception of what had occurred?"

A.: "Yes, it would."

judge on several occasions gave clear and precise instructions that the experts in this case were not testifying specifically about the three children and whether the children were telling the truth, we cannot say with certainty that the testimony of the Commonwealth's experts in response to the hypothetical questions would not have played a substantial role in determining the credibility of the child complainants in this case. "Curative instructions may not be adequate if inadmissible evidence of an inflammatory nature has been repeated or reemphasized." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 343 (1994).

The case was a classic duel of credibility between the defendant and the three children. The evidence against the defendant was not particularly strong. Two of the complainants initially denied that they were abused by any adult, but admitted to abuse by a playmate. Subsequently, they alleged abuse by the defendant, but their versions of that abuse varied. Two of the children gave accounts which stated that the abuse occurred in the defendant's front yard during the daytime. One of the children testified that he was also abused by the defendant's wife and two other adults that lived in the defendant's house, and that he, along with the other complainants, had suffered abuse inside the defendant's house. Another child denied that anything ever happened to her inside the defendant's house. There was no evidence that any of the three children had suffered physical injuries from the alleged abuse.

Accordingly, we think that, notwithstanding the admonition of the judge, the responses of the Commonwealth's experts to the hypotheticals in question would have played a significant role in the assessment of the children's credibility, making plausible an inference that the result might have been otherwise but for this error. *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). As a result, we conclude there was a substantial risk of a miscarriage of justice.

*Judgments reversed.*
*Verdicts set aside.*