## COMMONWEALTH *vs.* JOHN P. FANARA, JR.

No. 97-P-2048.

Barnstable. January 12, 1999. - August 13, 1999.

Present: GREENBERG, KAPLAN, & LENK, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury. *Evidence,* Fresh complaint, Expert opinion, Prior misconduct, Bias, Impeachment of credibility. *Witness,* Expert, Bias, Impeachment.

At the trial of indictments alleging indecent assault and battery, defense counsel's decision to elicit from the victims details of their complaints to third parties of sexual assault, in order to undercut and discredit the victims' credibility, was reasonable trial strategy and did not constitute ineffective assistance of counsel [563-564], and neither did counsel's failure to object to the prosecutor's introduction of such evidence, as part of that strategy, constitute ineffective assistance of counsel [564-566].

At the trial of indictments alleging indecent assault and battery, to the extent that certain unobjected-to testimony regarding the victims' complaints to third parties constituted fresh complaint evidence, the judge should have instructed the jury on his own motion on their limited use of fresh complaint testimony; however, the judge's failure to do so did not create a substantial risk of a miscarriage of justice, in light of the strong evidence against the defendant. [566-567]

At a criminal trial, defense counsel's tactical decisions regarding the Commonwealth's expert witness and whether to call a defense expert were reasonable and did not constitute ineffective assistance of counsel. [567-568]

At a criminal trial, the judge's strong admonishment to the jury to disregard evidence of a prior bad act of the defendant that the judge had erroneously admitted in evidence was sufficient to counteract any prejudice that may have arisen from the jury's hearing the withdrawn evidence. [568-569]

INDICTMENTS found and returned in the Superior Court Department, four on November 21, 1995, and one on March 12, 1996, respectively.

The cases were tried before *John M. Xifaras*, J.

*Joseph J. Balliro* for the defendant.

*Linda A. Wagner*, Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant, John P. Fanara, Jr., was at all relevant times a chiropractor. An employee and several of his patients accused him of improperly touching them. After a jury trial, the defendant was convicted of five counts of indecent assault and battery in violation of G. L. c. 265, § 13H, against five different victims.[1] On appeal, the defendant argues that he is entitled to a new trial because (1) his trial counsel's failure to object to fresh complaint testimony was ineffective assistance of counsel, (2) the trial judge's failure to instruct the jury sua sponte on the appropriate use of the fresh complaint testimony was error, (3) his trial counsel's failure to expose the bias of the Commonwealth's expert and to impeach her testimony was also ineffective assistance of counsel, and (4) the trial judge erroneously admitted evidence of a prior bad act by the defendant.

*Facts.* Considered in the light most favorable to the Commonwealth, the facts pertinent to the defendant's claimed errors are these. A chiropractor in private practice, the defendant employed other chiropractors, chiropractic assistants, physical therapists, and administrators. Jennifer Bauer worked as a chiropractic assistant at Fanara Chiropractic from August, 1986, to April, 1994. On more than two occasions between 1988 and 1990, the defendant pulled her into an examination room to kiss her and fondle her breasts; each time, Bauer told him to stop. The defendant once also came up behind Bauer, lifted her blouse, and cut her brassiere strap. On cross-examination by defense counsel, Bauer testified that she complained about Fanara to the police in January, 1995; she did not testify as to the details of that complaint.

---

[1] The defendant was indicted on two counts of indecent assault and battery against Jennifer Bauer, one count against Luanne Holmes, two counts against Cheryl Lena, three counts against Tammy Mattson, two counts against Joanne Nickerson, three counts against Carmen Calvo, and three counts against Wendy Pells. The defendant was convicted on one count each against Jennifer Bauer, Luanne Holmes, Cheryl Lena, Tammy Mattson, and Joanne Nickerson. The defendant was originally sentenced to not more than five and not less than four and one-half years at Massachusetts Correctional Institution (MCI) at Cedar Junction, committed, and ten years' probation from and after the committed portion of the sentence. After retaining new counsel, the defendant's motion to revise and revoke the sentence imposed was granted, and he was released on bail. His sentence was revised to not more than five and not less than four and one-half years at MCI at Cedar Junction, eighteen months of said sentence to be served, the balance suspended, and ten years' probation; the defendant was also required to attend sex offender counseling and undergo a drug and alcohol evaluation. The sentence was stayed pending appeal.

On August 17, 1992, Luanne Holmes,[2] one of Fanara's patients, went to him for a chiropractic adjustment. Fanara put his hand up her shirt, touched her right breast on the side, and said, "What you need is a breast exam." Holmes told him, "If you give me a breast exam, it will be the last exam you ever give," after which she got up and walked out of the office. Four days later she received a written apology from the defendant. She never returned to Fanara for chiropractic adjustments. Holmes testified on direct examination that in May, 1995, the police questioned her about Fanara, but did not testify as to the details of what she said to the police. On cross-examination by defense counsel, she testified that she complained about Fanara to two other chiropractors at Fanara Chiropractic in 1994, as well as to her friends and family on various occasions; she did not testify as to the details of those complaints.

Joanne Nickerson was Fanara's patient for approximately two years. During a visit in 1991, the defendant put Nickerson's knee into his groin; she felt his erection. Nickerson was uncomfortable and moved her knee away, but Fanara put it back into his groin. Nickerson removed her knee a second time. When Fanara put her knee into his groin for the third time, Nickerson told him, "Look — if you're not going to adjust my back, just leave my knee alone." Nickerson subsequently returned to Fanara for treatments. During a visit in February, 1992, Nickerson commented that she was forgetful. Fanara then massaged certain points above her breasts "all around the clavicle and the sternum" and told her that massaging those areas might help her memory to return. Nickerson's last visit to Fanara was in August, 1992. On cross-examination by defense counsel, she testified that the police questioned her about these incidents, but did not testify to the details of her conversation with them.

Tammy Mattson occasionally sought chiropractic treatment from Fanara. On approximately six occasions, Fanara left his hands on her buttocks and then ran a hand down her leg after an adjustment. Mattson testified on cross-examination that she reported these incidents to the police after she saw Fanara's indictment reported in a newspaper in November, 1995. Defense counsel also cross-examined Mattson on the details of her report, emphasizing inconsistencies between the police report and her trial testimony.

[2]As is our custom, we refer to the victims as their names appear on the indictments. At trial, this witness referred to herself as Luanne Westman.

Cheryl Lena was Fanara's patient from July, 1992, through March, 1994. In the fall of 1993, Fanara ran his finger up the cleft between her buttocks as she was exiting the examination room. On another occasion Fanara touched Lena's breasts when he was adjusting her neck from behind her. Lena testified on direct examination that she reported Fanara to the Board of Registration of Chiropractors (board) in May, 1993.[3] Defense counsel cross-examined Lena as to the details of her complaints to the board and the police as well as her testimony before the grand jury.

The defendant called as his first witness Detective Bernd Wunderlich of the Dennis police department, the chief investigator in this case. Wunderlich was not presented as a fresh complaint witness, and the trial judge was neither requested to give fresh complaint instructions, nor did he do so sua sponte. Wunderlich testified on direct examination that Lena approached him about Fanara's inappropriate conduct on January 24, 1995, and that Mattson contacted Wunderlich about Fanara's conduct after Fanara's indictments were reported in the newspapers. Wunderlich also testified on direct examination by defense counsel that he contacted Bauer, Nickerson, and Holmes in the course of investigating the case. He also detailed some of the complaints made to him by Holmes and Mattson against Fanara.

The defendant testified on his own behalf. He denied any indecent touching, and said he cut Bauer's brassiere strap in playful retaliation for her prior act of having cut his tie. Fanara accused the victims of falsely, vindictively, and unjustly conspiring against him.

1. *Failure to object to fresh complaint testimony.* The defendant claims that he was afforded ineffective assistance when his trial counsel failed to challenge the admissibility of fresh complaint testimony. Specifically, the defendant argues that when each victim testified about having complained to third parties, his trial counsel should have objected that such testimony was impermissible hearsay, and, were it nonetheless admitted as fresh complaint, his trial counsel should have requested limiting instructions. In order for the defendant to succeed on his ineffective assistance claim, we must conclude that defense counsel's behavior fell "measurably below that

---

[3] On cross-examination Lena testified that she was confused about the dates and that she, in fact, filed her report with the board in May, 1994.

which might be expected from an ordinary fallible lawyer" and that it "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The testimony which appellate counsel characterizes as objectionable fresh complaint testimony was elicited in several ways: by defense counsel on both direct and cross-examination, and by the prosecutor on direct examination. We consider each in turn.

First, the defendant contends that his defense counsel rendered ineffective assistance by not objecting to the admissibility of evidence elicited by defense counsel through the direct or cross-examination of witnesses, and by not requesting a limiting instruction from the judge each time a witness gave such testimony. His claim, in other words, is that counsel should have objected to his own questions, a claim tantamount to saying that the questions should not have been posed at all.

To be sure, a victim's in-court testimony as to her previous out-of-court complaints of sexual assault made to third parties may well be fresh complaint testimony, but only if offered to corroborate her in-court allegations of sexual assault. See *Commonwealth* v. *Peters,* 429 Mass. 22, 27 (1999), and cases cited. The testimony elicited by defense counsel was hardly brought forth for this purpose. To the contrary, defense counsel plainly elicited the testimony in order to impeach the victims with their prior inconsistent statements as well as to further Fanara's defense that the victims had conspired against him. There was no risk here that "repetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony," *Commonwealth* v. *Licata,* 412 Mass. 654, 659 (1992), since the entire point of this line of questioning was to undercut and discredit the victims' credibility. Defense counsel's decision to pursue such a line of questioning at trial falls well within the realm of reasonable trial strategy. As such, the failure to object to such testimony as fresh complaint does not constitute ineffective assistance of counsel.

Second, the prosecutor elicited testimony from Holmes and Lena on direct examination, without objection, as to their out-of-court complaints made to third parties, i.e., Holmes to the police, and Lena to the board. If defense counsel had objected,

the testimony would likely have been excluded as improper fresh complaint testimony.[4]

However, failure to object to fresh complaint evidence does not constitute ineffective assistance of counsel when it forms

---

[4]Such self-corroborating testimony would have been admissible, if at all, only under the rubric of fresh complaint. *Commonwealth* v. *Scullin*, 44 Mass. App. Ct. 9, 11-12 (1997). See *Commonwealth* v. *Peters*, 429 Mass. at 28-30. The Supreme Judicial Court recently clarified the law of fresh complaint. In *Commonwealth* v. *Peters*, 429 Mass. at 27, the court observed, "[o]ur fresh complaint doctrine permits an out-of-court complaint seasonably made by [a victim] in a sexual assault case to be admitted as part of the prosecution's case-in-chief. Evidence of the fact of the complaint is admissible only to corroborate the [victim's] testimony. It cannot be used to establish the truth of the complaint itself" (citations and footnotes omitted). Corroborative testimony "tends to strengthen, confirm or make more certain the testimony of another witness." *Commonwealth* v. *Licata*, 412 Mass. at 657 n.6 (citations omitted). Under the fresh complaint doctrine, the victim "may testify [on direct examination] *only* to the fact that a fresh complaint was made and to whom it was made." *Commonwealth* v. *Peters*, 429 Mass. at 30. Although the victim is not permitted to testify about the details of the complaint on direct examination by the Commonwealth, defense counsel may cross-examine the victim about the details of the complaint. *Ibid.* If the victim testifies that she made a complaint, the third party who heard the victim's complaint, the "fresh complaint witness," must testify and be available for cross-examination. *Id.* at 28, 30. The fresh complaint witness may then testify as to the details of the complaint. *Ibid.*

To the extent that Holmes testified only to the fact that she made such complaint to the police, and that the police officer to whom she complained, Wunderlich, in fact testified, albeit called by the defense, the testimony would have been admissible. However, the testimony nonetheless was inadmissible as fresh complaint testimony because it was stale. Had trial counsel objected, the judge would have had to make a preliminary determination as to whether the complaint was sufficiently prompt for the fresh complaint doctrine to apply. *Commonwealth* v. *Montanino*, 409 Mass. 500, 508 (1991). "The test is whether a victim's delay in reporting alleged abuse was reasonable under the circumstances." *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 469 (1996). Given that Holmes's complaint to the police was made two years and nine months after the incident, that Holmes was an adult, and that there was no evidence that Fanara threatened her in any way, *ibid.*, Holmes's testimony in this regard on direct examination by the prosecutor was inadmissible as fresh complaint.

Lena testified that she had reported Fanara to the board; she did not testify to the details of her complaint on direct examination. Assuming, without deciding, that her written report can be considered a "complaint" under the fresh complaint doctrine, no one from the board, the "person" complained to, was called to testify or was made available for cross-examination. Lena's testimony in this regard was thus also inadmissible as fresh complaint. *Commonwealth* v. *Peters*, 429 Mass. at 31.

part of the defense counsel's trial strategy. *Commonwealth* v. *Lamontagne,* 42 Mass. App. Ct. 213, 221 (1997). See *Commonwealth* v. *McCarthy,* 12 Mass. App. Ct. 722, 729 (1981). Compare *Commonwealth* v. *Gillette,* 33 Mass. App. Ct. 427, 430-432 (1992); *Commonwealth* v. *Sugrue,* 34 Mass. App. Ct. 172, 174 (1993); *Commonwealth* v. *Scullin,* 44 Mass. App. Ct. 9, 12 (1997). For nine pages of trial transcript, defense counsel vigorously cross-examined Holmes about inconsistencies between her report to the police and her in-court testimony, and pursued a line of questioning about whether Fanara's patients conspired against him. During his closing argument, defense counsel called an inconsistency between Holmes's in-court testimony and her report to Wunderlich "a smoking gun . . . that proves Fanara's story and disproves her story." Similarly, for five pages of trial transcript, defense counsel attempted to impeach Lena's credibility by cross-examining her about inconsistencies between her report to the board and her complaint to Wunderlich; in doing so, defense counsel used details of Lena's report to the board to which she had not testified on direct examination. Defense counsel then emphasized those inconsistencies at length in his closing argument. Because defense counsel used the "fresh complaint" testimony elicited by the prosecutor strategically as part of his theory of defense, his failure to object did not constitute ineffective assistance of counsel.

2. *Sua sponte fresh complaint instructions.* To the extent that the testimony elicited by the prosecutor from Holmes and Lena was admitted without objection as fresh complaint, the trial judge should have instructed the jury sua sponte on the limited purposes of fresh complaint testimony. See *Commonwealth* v. *Almon,* 30 Mass. App. Ct. 721, 724 (1991). Indeed, whenever fresh complaint testimony is given, the trial judge should instruct the jury, both when the evidence is admitted and later during final jury instructions, that if the jurors find that the victim seasonably complained of the assault, they may use the fresh complaint testimony only to corroborate the credibility of the victim's testimony and not as substantive evidence that the crime in fact occurred. *Commonwealth* v. *Licata,* 412 Mass. at 660.

The trial judge's failure to give such limiting instructions here does not mandate a new trial. See *Commonwealth* v. *Peters,* 429 Mass. at 30-31. "The test is whether there is a substantial

risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). See *Commonwealth* v. *Almon*, 30 Mass. App. Ct. at 724-726. This was not a close case. There was ample and strong evidence against Fanara, *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 534 (1996), cert. denied, 520 U.S. 1245 (1997), and the challenged testimony did not fill any gaps in the prosecutor's case. *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976). Also, the victims did not testify as to the details of their complaints, see *Commonwealth* v. *Peters*, 429 Mass. at 31-32, and the challenged testimony was not of an emotional nature nor in graphic detail. Contrast *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 457 (1996). We do not discern a substantial risk of a miscarriage of justice.

3. *Expert testimony.* The defendant claims that trial counsel's failure to object to Pamela Lattimer as the Commonwealth's sole expert witness and his failure to offer countervailing expert testimony afforded the defendant ineffective assistance of counsel. Lattimer, a chiropractor formerly in the defendant's employ, gave expert testimony about general chiropractic procedures and did not testify as a percipient witness. Defense counsel was unable, for obvious reasons, to undercut the Commonwealth's expert witness by exposing, as was his right,[5] Lattimer's substantial bias against the defendant, namely, that Lattimer herself had made a criminal complaint (not part of these proceedings) against Fanara for indecent assault and battery. Based on the facts of this case, defense counsel's decision to accept Lattimer as the Commonwealth's sole expert and not to call his own expert were tactical decisions that were not manifestly unreasonable when made.

First, before trial, the defendant and his trial counsel discussed the fact that the Commonwealth was planning to call Lattimer as a witness. They decided that they preferred Lattimer to an unfamiliar but more "high-powered" expert because Lattimer, well known to Fanara, would appear informal and her manner would not be forceful or effective.

Second, the jury were not bound to believe Lattimer's expert testimony, even though it remained uncontradicted by anyone called to testify as an expert on behalf of the defendant. See

---

[5]The defendant had the right to cross-examine the Commonwealth's expert witness to expose any bias. *Commonwealth* v. *Perkins*, 39 Mass. App. Ct. 577, 581 (1995), citing *Commonwealth* v. *Amaral*, 389 Mass. 184, 192 & n.11 (1983), and *Commonwealth* v. *Aguiar*, 400 Mass. 508, 513 (1987).

*Harris* v. *Old King's Hy. Regional Historic Dist. Commn.*, 38 Mass. App. Ct. 447, 451 (1995). See also *Dodge* v. *Sawyer*, 288 Mass. 402, 408 (1934). The record shows that Lattimer's testimony did not in fact contradict Fanara's as to chiropractic technique, and Fanara maintained that his patients overreacted to his innocent gestures and inadvertent touchings in the course of legitimate chiropractic treatment.

Because defense counsel's tactical decisions were not manifestly unreasonable when made, they did not amount to ineffective assistance of counsel. *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998).

4. *Prior bad acts.* The trial judge admitted evidence of the defendant's prior bad act against a victim. The defendant claims that this was prejudicial error entitling him to a new trial. It was not.

Jennifer Bauer testified that she was Fanara's employee. In answer to a general question about incidents when she was with Fanara in an examination room, Bauer began to describe an incident when Fanara gave her a chiropractic adjustment. Her testimony was interrupted by an objection. At sidebar, the prosecutor admitted that the adjustment incident to which Bauer was referring occurred in 1987 and was outside the statute of limitations. He nevertheless wanted Bauer to testify about two prior acts by the defendant in 1987 (the adjustment incident and an attempted rape) in order to show the relationship between Bauer and Fanara. The trial judge did not allow Bauer to testify about the attempted rape, but did permit her to testify about the adjustment incident.

Bauer testified that, during an adjustment, Fanara touched "trigger points" near her breasts and she asked him to stop. The prosecutor went on to ask Bauer about a 1987 Christmas party incident, to which the defendant's immediate objection was sustained. After clarifying the date of the Christmas party, the trial judge said to the jury, "I'm going to strike the rest of the testimony. It's outside — the earlier stuff, disregard also. There is no charge. It's outside of the statute of limitations. It's all stricken. Jury is to disregard it." Bauer then testified about the two incidents that were listed on the bill of particulars, namely that Fanara pulled her into an examination room to kiss her and to fondle her breasts, and that Fanara cut her brassiere strap.

The judge should not have allowed Bauer to testify about the 1987 adjustment incident. When he realized his misstep, he im-

mediately instructed the jury to disregard the evidence. "[J]urors may be expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 (1963). The trial judge's instructions were strongly worded, but they were not in the "plain, unmistakable language" that would have been preferable. *Commonwealth* v. *Cabot*, 241 Mass. 131, 150 (1922). Compare *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970). Nonetheless, we think the jury understood that the judge was referring to the 1987 adjustment when he told them to disregard what they had heard, since that was the only subject on which Bauer had testified, aside from some introductory matters. The judge's instructions were sufficient to counteract any prejudice that may have arisen from the jury's having heard withdrawn matter. Contrast *Heina* v. *Broadway Fruit Mkt., Inc.*, 304 Mass. 608, 611 (1939).

*Judgments affirmed.*