Agnes, A.J.
1. Procedural Histoiy
Following a jury trial, the defendant was convicted on June 11, 1987 of two counts of rape of a child under sixteen in violation of G.L.c. 265, §22A; forcing a child under aged 16 to perform oral sex against his will in violation of G.L.c. 265, §23; causing two children under 18 to engage in sexual conduct for the purpose of photographic representation in violation of G.L.c. 272, §29A; two counts of indecent assault and battery on a child under 14 in violation of G.L.c. 265, §13B; and assault to commit rape on a child under 14 in violation of G.L.c. 265, §24B. The defendant appealed the convictions and while that appeal was pending the defendant joined in his co-defendant, Laura Tuft’s motion for new trial. A hearing was held before the trial judge. The judge denied the motion for new trial and the defendant appealed that denial. The Supreme Judicial Court considered the defendant’s appeal along with the denial of his motion for new trial and affirmed the defendant’s convictions. Commonwealth v. Dockham, 405 Mass. 618 (1989). The defendanthas filed a second motion for a new trial pursuant to Mass.R.Crim.P. 30(b).
2. Standard of Review
When a defendant appeals in the first instance or files a motion for new trial, any grounds not raised in *9 those proceedings are thereafter considered to be waived. Mass.R.Crim.P. 30(c)(2). “If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived.” Rodwell v. Commonwealth, 432 Mass. 1016, 1018 (2000) (rescript). The doctrine of waiver is grounded in a public policy. It “ensures the finality of convictions by eliminating piecemeal litigation, which would ‘unfairly consume public resources without any corresponding benefit to the administration of justice.’ ” Commonwealth v. Chase, 433 Mass. 293, 297 (2001), quoting Commonwealth v. Pisa, 384 Mass. 362, 366 (1981). “Although the public’s interest in the finality of criminal convictions is weighty, it is not always paramount.” Commonwealth v. Randolph, 438 Mass. 290, 294 (2002). Because “we cannot rid ourselves by process alone of the possibility of error and of grave and lingering injustice,” Commonwealth v. Amirault, 424 Mass. 618, 637 (1997), the court may review an issue raised for the first time in a second motion for new trial in the “extraordinary case where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.” Commonwealth v. Harrington, 379 Mass. 446, 449 (1980). See also Commonwealth v. Curtis, 417 Mass. 619, 626 & n. 4 (1994).
Appellate decisions in Massachusetts recognize five exceptions to the doctrine of waiver. Commonwealth v. Randolph, supra, 438 Mass. at 294, citing Commonwealth v. Miranda, 22 Mass.App.Ct. 10, 14-19 (1986). Each exception represents a circumstance in which the doctrine of waiver and the public interest in finality is overcome by the more paramount interests of justice and fairness. Each exception is limited in scope, although in combination, these exceptions address all possible instances where a defendant is entitled to judicial review of his or her claim. The first exception is pursuant to G.L.c. 278, §33E. This mandatory review by the Supreme Judicial Court in the case of a conviction for murder in the first degree requires the court to look at the entire record, regardless of whether an issue has been properly preserved, and determine whether there has been a “substantial likelihood of a miscarriage of justice.” Commonwealth v. Ciampa, 406 Mass. 257, 267-68 (1989) (emphasis added). The second exception is available to eveiy defendant who has not preserved his claim for review except for those on direct appeal from a conviction of murder in the first degree. In those instances, the court examines the record as a whole to determine the “strength of the Commonwealth’s case, as well as the nature and significance of the alleged errors.” Commonwealth v. Chase, 433 Mass. 293, 299 (2001). If, after review, the court is left with a sense that the “defendant’s guilt has not been fairly adjudicated,” a new trial will be granted. Id. The standard applied by the court is whether there has been a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 564 (1967) (emphasis added).[1] The third exception, known as the “clairvoyance” exception, applies to “errors of a constitutional dimension” based on theories not fully developed at the time of trial or at time of appeal. Commonwealth v. Randolph, 438 Mass. 290, 295 (2002). See also Commonwealth v. Miranda, 22 Mass.App.Ct. 10 (1986). The fourth exception is based on a claim that an issue was not properly preserved because trial counsel was ineffective. Commonwealth v. Egardo, 426 Mass. 48, 49-50 (1997). In such circumstances, the court will determine whether an error has been committed and, if as a result of that error, there has been a substantial risk of a miscarriage of justice Commonwealth v. Azar, 435 Mass. 675, 686 (2002). The fifth and final exception arises when the trial judge exercises discretion to reach the merits of an issue that the defendant did not preserve during the original trial, on a motion for a new trial either before or after the direct appeal, and in this way “resurrects” the issue for appellate review. Commonwealth v. Hallet 427 Mass. 552, 554-55 (1998); Commonwealth v. Curtis, supra, 417 Mass. at 624-25.
3. Alleged Error in Admission of Expert Testimony
Defendant alleges that the trial judge erred in admitting the expert testimony of Drs. Brant and Paradise. As a basis for that claim, the defendant relies on a recent Appeals Court opinion. Although this claim may or may not be considered a “clairvoyance” exception, even under this more deferential standard of review the defendant’s claim must nevertheless fail.
The defendant asserts that subsequent to the time of his appeal, the Appeals Court has since considered similar expert testimony — coincidentally based on the opinions of Drs. Brant and Paradise — and determined that such evidence in the format offered to the court (hypothetical questioning based almost exclusively on the specific facts at issue in the case) was prejudicial to the defendant in that it amounted to an “endorsement of the credibility of the complaining child witness.” Commonwealth v. Perkins, 39 Mass.App.Ct. 577, 584 (1995). The defendant alleges that the Court’s decision in Perkins is controlling in his case as it pertains to the expert testimony offered by Dr. Brant.
In Perkins, a case factually similar to the case at bar, the defendant appealed his conviction arguing that, among other things, the Commonwealth’s expert witness, again Dr. Brant, in the course of her testimony “assessed the credibility of the children’s claims of sexual abuse.” At trial, Dr. Brant testified to the characteristic signs and symptoms generally displayed by a child who has been sexually abused and on the appropriate methods utilized to question a child who has alleged to have been sexually abused. The court noted that an expert witness may testify to the types of behaviors manifested by a sexually abused child, but the witness is restrained from comparing those general behaviors to the child or children in question. In Perkins, the Court found that the Com *10 monwealth overstepped its bounds by asking Dr. Brant a series of hypothetical questions that were starkly similar to the instances of alleged abuse. Further, Dr. Brant was asked what physical and emotional manifestations could be expected as a result of the abuse. She offered her opinion of the types of behaviors likely in each “hypothetical” instance proffered by the Commonwealth. In each instance, the likely behaviors matched the behaviors exhibited by the children. Dr. Paradise also testified. In response to similar hypothetical questions, she testified that the children’s complaints of abuse were consistent with the medical exams of the children.
The court held that the hypothetical questions posed by the Commonwealth too closely mirrored the underlying facts of the case, and “would inescapably have the same impact on the jury as a direct reference to and comparison with the child witnesses in the case.” The elicited testimony was held to be improper as it may have played a role in the jurors’ determination of the credibility of the child witnesses.
Subsequently, the Supreme Judicial Court applied the holding of Perkins to another case based on similar facts. The Court reviewed the admissibility of expert testimony offered, again, by Drs. Brant and Paradise, and determined that admission of their testimony was error. Commonwealth v. Frederico, 425 Mass. 844 (1997). As in Perkins, the Commonwealth proposed hypothetical questions that substantially mirrored the facts of the case. The Court held that the doctors’ expert testimony likely invaded the province of the juiy in assessing the credibility of the childrens’ testimony. The Court again noted, as it had in Perkins, that the allegations by the child witnesses were the only evidence against the defendant and therefore the assessment of the credibility of those witnesses was crucial to the defendant’s conviction.
In the case at bar, the defendant, in his direct appeal, did challenge the admission of Dr. Brant’s testimony. At that time, his challenge was based on the fact that Dr. Brant’s testimony regarding the general behavioral characteristics of sexually abused children was not, and should have been, elicited pursuant to hypothetical questions “related to the facts of the case.”. Commonwealth v. Dockham, 405 Mass. at 627-28. Now, in light of Perkins and Frederico, the defendant contends that the answers given by Dr. Brant too closely resembled the physical and emotional manifestations exhibited by the child witness. The defendant concedes that the Commonwealth did not ask Dr. Brant any hypothetical questions, but rather alleges that the questions were “carefully crafted” to elicit testimony that would fit the behaviors exhibited by the child.
“An expert may testify to general syndromes associated with sexual abuse.” Commonwealth v. Allen, 40 Mass.App.Ct. 458, 465 (1996). However, the expert must be careful not to compare those general behaviors to the child in question. For instance, the expert may not testify that the child’s symptoms are consistent with a pattern of behaviors seen in sexual abuse victims. Nor may the expert refer to the particular behaviors manifested by the child as being consistent with those seen with respect to the particular type of alleged sexual abuse. Commonwealth v. Trowbridge, 419 Mass. 750, 759-60 (1995).
The defendant’s case was transferred from the Appeals Court and heard in the first instance by the Supreme Judicial Court. The Court found that Dr. Brant testified to the general types of behaviors exhibited by children of sexual abuse including delay in disclosure, retraction of statements, and repression of the abuse. She also testified as to the behavioral signs of abuse including sexualized play, knowledge of adult sexual functions, fears and anxieties related to certain body parts as well as depression, withdrawal, guilt, shame, anxiety and hypervigilance. Dr. Brant did not refer to, or compare her findings, with the symptoms exhibited by the child witness. Commonwealth v. Dockham, 405 Mass. at 628. The Court found that the testimony in the form procured was properly admissible. Id. at 630.
The testimony elicited by Dr. Brant was in full conformance with the law at the time of the defendant’s trial and as it has presently evolved. Dr. Brant testified as to general characteristics associated with child sexual abuse. As the Court found in the defendant’s direct appeal, Dr. Brant made no references or comparisons to the child witness. Id. at 628. As such, Dr. Brant’s testimony neither vouched for the credibility of the child witness nor intruded on the jury’s role in assessing the credibility of the child witness. Commonwealth v. Quincy Q., 434 Mass. 859, 872 (2001) (although there is a fine line between permissible and impermissible opinion testimony in child abuse cases, experts may offer an opinion of the general behavioral characteristics exhibited by sexually abused children).
4. Reliability of Theory Underlying Expert Testimony
The defendant’s next claim is that the trial judge erred by not making a determination prior to the admission of Dr. Brant’s testimony of whether her opinion was based upon reliable scientific theories. This issue, although known to the defendant at time of trial, was not raised in either the defendant’s motion for new trial or in his direct appeal and therefore, the issue is subject to waiver under M.R.Crim.P. 30(2). Nevertheless, the Court may, in its discretion, consider the issue if “it appears that a miscarriage of justice might otherwise result.” Commonwealth v. Curtis, 417 Mass. 619, 626 (1994). Under these circumstances, discretionary review is limited to whether there has been a substantial risk of a miscarriage of justice. In engaging in this analysis the Court must determine whether, absent the alleged error, the out *11 come of trial would have been different. Commonwealth v. LaFave, 430 Mass. 169, 174 (1999).
The determination of whether to admit expert testimony lies within the broad discretion of the trial judge. Commonwealth v. Richardson, 423 Mass. 180, 182 (1996). See Commonwealth v. Frangipane, 433 Mass. 527, 538 (2001). Although in its review the Supreme Judicial Court did not specifically address the underlying theory of Dr. Brant’s expert testimony, the Court did examine, at great length, Dr. Brant’s testimony within defendant’s direct appeal and determined that the testimony about “general behavioral characteristics of sexually abused children” was within the trial judge’s discretion to admit. Commonwealth v. Dockham, 405 Mass. at 627-30. Therefore, this Court, in light of that decision and defendant’s waiver of the claim, will not re-open the issue for review.
5. Ineffective Assistance of Counsel
The defendant’s final claim is that his trial counsel was ineffective for not questioning Dr. Brant as to the reliability of the theory on which she based her opinion and further, that counsel was ineffective for not offering an expert witness to counter the Commonwealth’s expert witness on the issue of the child witness’s credibility.
In order to support a claim of ineffective assistance of counsel, a defendant must show a “serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer” and, that as a result, defendant has been deprived of an “otherwise available, substantial ground of defense.” Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant must show that somehow better work might have resulted in something material for the defense. Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). In evaluating whether a tactical judgment by defense counsel amounts to ineffective assistance of counsel, the Court must determine whether that decision is not just unreasonable, but rather, whether the decision is “manifestly unreasonable.” Commonwealth v. White, 409 Mass. 266, 273 (1991).
In addition, where trial counsel and appellate counsel are the same, claims of ineffective assistance of counsel are not subject to the rule of waiver. The courts have recognized that it is “unrealistic to expect” a trial attorney, serving subsequently as defendant’s appellate attorney in the matter, to raise a claim of ineffective assistance of counsel thus “calling his own competence into question.” Commonwealth v. Lanoue, 409 Mass. 1, 3-4 (1990). The record shows, and the Commonwealth concedes, that defendant’s trial counsel was also appellate counsel for the defendant. In addition, defendant’s trial counsel has submitted an affidavit attesting to the fact that he also represented the defendant in his first motion for new trial.
Despite the inapplicability of the waiver doctrine in these circumstances, the defendant’s ineffective assistance of counsel claim with respect to the foundational requirements for the expert opinion testimony offered at his trial by Dr. Brant is foreclosed by the determination already made that the admission of the testimony, if erroneous, did not create a substantial risk of a miscarriage of justice. In Commonwealth v. Randolph, 438 Mass. 290, 295-96 (2002), the Supreme Judicial Court explained that the standard of review in evaluating an ineffective assistance of counsel claim based on counsel’s failure to raise and preserve an issue at trial or on appeal is no different from the substantial risk of a miscarriage of justice standard. “Thus, when a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately.”
CONCLUSION
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for new trial is DENIED.

 Differing views have been expressed about the precise meaning of this standard. See, e.g., Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (Ireland, J.) (“[W]e consider the strength of the Commonwealth’s case against the defendant (without consideration of any evidence erroneously admitted, the nature of the error, whether the error is sufficiently significant in the context of the trial to make plausible an inference that the (Jury’s] result might have been otherwise but for the error, and whether it can be inferred from the record that counsel’s failure to object was not simply a reasonable tactical decision”); id. at 23 (Greaney, J., concurring) (“As a general proposition, to create a substantial risk of a miscarriage of justice, the error must be serious when considered in terms of its injurious effect or influence on the jury’s verdict. The defendant bears the burden of showing that the error could have had such an impact, and the appellate court will not apply the test to grant the defendant relief in the absence of substantial agreement by the appellate panel that a new trial is necessary to correct a conviction that leaves the feeling that an injustice has occurred and to assure that trials are fundamentally fair”); id. at 25 (Fried, J., concurring) (“ In the case of the harmless error standard, we ask if we can be quite sure that the outcome of the trial would have been the same had the error not been committed. In the case of the miscarriage of justice standard, properly understood, we ask whether there is a substantial risk that an innocent person has been convicted. Both standards require an appellate court to second-guess the original trial determination, and neither is mechanical; in these respects they do not differ. But they differ in respect to the questions they ask. The formulation of miscarriage of justice the court today promulgates not only threatens the concept of waiver, and with it the finality of error-free trial court proceedings (error-free in the sense that no objections were improperly denied), it makes no sense when fitted into the rest of our body of criminal jurisprudence”). The prevailing view appears to be whether or not the error had a material affect on the defendant’s guilt. See also Commonwealth v. Sheehan, 435 Mass. 183, 190 (2001), quoting Commonwealth v. Bohannon, 376 Mass. 90, 94 (1978), S.C., 385 Mass. 733 (1982) (“When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied” creating a substantial risk of a miscarriage of justice).