Connolly, J.
This case involves a passenger bus which struck and permanently injured a pedestrian, namely, the plaintiff Odin Anderson on Wednesday, September 2, 1998 at the intersection of Stanhope Street and Cardinal O’Connell Way, Boston MA. The driver of the bus, Norman C. Rice was attempting to turn left onto Stanhope Street as it runs towards the Fleet Center. Mr. Rice was employed at the time of the happening of the accident by Partners Healthcare, which was the registered owner of the bus.
The plaintiffs are represented by Richard Brody and Leonard Kesten of Boston, MA. The defendants are represented by John W. Patton, Jr. of Rustin Patton and Macionowski of Chicago, IL and H. Charles Ham-belton of Gibson & Behman, P.C. of Burlington, MA.
It took eighteen days to try this case to a juiy. This judge first became involved in this case on April 22, 2003 when the Court entered an order for the defendants to properly supplement their answers to the plaintiffs Mass.R.Civ.P. 26(b)(4) interrogatories. The case was tried in June 2003.
The trial of this case was very contentious, to say the least. For example, the defendants filed 28 motions to preclude evidence immediately before or at the beginning of the trial, and three typed motions for a mistrial along with numerous oral motions for mistrial during the trial. One of the counsel for the defendant, in court and on the record, but outside of the presence of the jury, accused the Court of having his finger on the scale of justice in not being fair to the defendant. This type of conduct went on for 18 days.
The Court has read all the submissions, and reviewed its trial notes. The Court believes that the memorandum of the plaintiffs adequately covers and responds to the issues, except as to two issues, raised by defendants’ counsel in their Motion for a New Trial. Since the defendants raise the issue that the Court exhibited bias against their clients, the Court wishes to call the parties’ attention to two areas from the Court’s final charge.[1]
Near the beginning of the charge, the Court instructed the jury as follows:
You should not consider anything I have said or done during the trial in ruling on motions or objections, or in comments to the attorneys, or in questions to witnesses, or in setting forth the law in these instructions — as any indication of my opinion as to how you should decide the case. If you believe that I have expressed or hinted at any opinion about the facts of this case, please disregard it. I have no opinion about the facts or what your verdict ought to be; that is solely and exclusively your duty and responsibility.
Again in the middle of the charge and before charging the jury on the burden of proof, the Court instructed the jury as follows:
I want to reemphasize my request that you draw no conclusions from the fact that on occasion I asked questions of some witnesses. I intended those ques *791 tions only to clarify or expedite matters. They were not intended to suggest any opinions on my part about your verdict or about the credibility of any witness. You should understand that I have no opinion as to the verdict you should render in this case.
If I have said or done anything, for example, in asking some questions, to cause you to believe that I have any opinion concerning the facts in this case, then you are mistaken, because I am totally neutral on this issue.
You are not to consider the tone or inflection of my voice in reaching a verdict. You should not listen to any of my voice inflections as any indicator of what my thoughts are as to any possible verdict. I have no such thoughts.
You are not to consider any witnesses’ answers to my questions as having greater weight than those questions put to the witness by any attorney.
The first issue to be discussed is that there is the matter of one Superior Court case that was handled post-accident by the plaintiff. It was a claim by Mr. Anderson’s client for benefits from his former employer. All that was done in the case was the taking of depositions, some of which were also attended by an associate lawyer of Mr. Anderson on behalf of the plaintiff. The defendant filed a motion for summary judgment which was allowed by a Superior Court judge. While defendants’ counsel knew or should have known about this case from discovery, nothing was ever done to locate it or the lawyer representing the defendant in that case. During trial, one of the associate counsel for the defendant (who was present in courtroom, but did not sit at counsel table, namely, Daniel Gibson) telephoned counsel for the defendant in the above dismissed case. Counsel for the defendant in the dismissed case, Edward S. Rooney, Jr. of the national law firm, of Eckert, Seamans, Cherin & Mellott, LLC agreed to meet with Mr. Gibson, for approximately 30 to 60 minutes in his office on that same day and made his entire file available to Mr. Gibson. Said Attorney Mr. Rooney agreed to testify on behalf of the defendants and in a manner favorable to the defendants regarding Mr. Anderson’s ability (post accident) to handle the case. Then Mr. Rooney agreed to meet the defendants’ trial team and others early the next morning before trial commenced, for breakfast at the Sonesta Hotel. That morning, counsel for the defendants indicated that they had newly discovered evidence and that they wished to call Mr. Rooney as an expert who was then in the courtroom. The court believed that the evidence was not newly discovered evidence, if defendants’ counsel had done a proper investigation. Nevertheless, the Court indicated that the plaintiffs should be allowed to take Mr. Rooney’s depositions when Court was not in session. After Mr. Rooney’s deposition was taken, the defendants asked to call Mr. Rooney as an expert. The Court on the record indicated that it was inclined, in its discretion, to allow Mr. Rooney to testify.
Mr. Rooney was in court, so the Court asked him to take the stand, out of the presence of the jury, to conduct a colloquy. The Court asked Mr. Rooney whether he has ever performed legal work or was paid for legal work by American International Group (AIG). AIG is now the largest insurance company in the world. AIG was also the insurer for both defendants in this case, with coverage believed to be in excess of $50 million dollars. Mr. Rooney indicated that he has handled case(s) in which AIG paid his legal fees, and that AIG is a major client of his national law firm around the United States.
The Court then took up with trial counsel how the issue of bias would be dealt with if Mr. Rooney testified. Cross-examination of an adversary’s expert witness on the issue of bias is a matter of right, and not of discretion. See Liacos, Handbook of Mass. Evidence, 7th Edition, §6.9, p. 299-309. An expert witness is not immune from impeachment by evidence of bias or interest. Commonwealth v. Perkins, 39 Mass.App.Ct. 577, 581 (1995). “(W]hen a possibility of bias exist, however, even if remote, the evidence is for the jury to hear and evaluate.” Commonwealth v. Henson, 394 Mass. 584, 587 (1985).
In this case, counsel for the defendants did not want any mention that Mr. Rooney’s firm did work for AIG or “for a party that has a major financial interest in the case on trial.” The court suggested a possible solution (i.e., doing legal work for a party that has a major financial interest in this case) and asked counsel to confer to see if they could reach an agreement. They never conferred. The next time the Court heard of this issue was just before the defendants rested. Defendants’ attorney objected that they could not call Mr. Rooney without subjecting him to cross-examination regarding his and his law firm’s work for AIG on the issue of bias. The Court did not say or rule that plaintiffs’ counsel would be allowed to mention AIG or insurer before the jury but that some limited cross-examination on the issue of bias would be allowed. The defendant’s counsel never called Attorney Rooney as a witness, and never suggested any other approach to the Court, other than that no discussion of Mr. Rooney’s possible bias be allowed.
The second issue to be discussed is the claim by defendant’s counsel that the Court “cross-examined Mr. Rice” creating the impression that Mr. Rice had been negligent in not seeing Mr. Anderson prior to the accident (p. 12 of defendant’s memorandum in support of their Motion for New Trial). On Wednesday, June 18, 2003, both counsel had finished their examination of Mr. Rice. The Court stated “since this question wasn’t asked of you, I think I’ll ask the question." Then, after asking preliminary questions, the Court asked Mr. Rice, “Do you have any explanation why you didn’t see him?” Mr. Rice answered that he did not *792 have any explanation for why he didn’t see Mr. Anderson walking across Stanhope Street. Mr. Rice stated earlier that he saw Mr. Rice for “like a blink of the eye, very quick” before hearing the sound of the bus hitting Mr. Anderson. The Court has the right to ask questions of a witness. The key question that the Court asked Mr. Rice was an important one, which neither counsel asked. The question asked Mr. Rice was “did he have any explanation.” It was a direct, non-leading question consisting of an invitation for Mr. Rice to tell the jury his side of the story.

ORDER

The motion for a new trial by the defendants Norman W. Rice and Partners Healthcare Systems, Inc. is DENIED.

The entire charge to the jury was taped by the Court, and submitted to the jury in the jury room. The tape has been marked for identification and may be reviewed in total by an appellate court in the event of any appeal.