COMMONWEALTH *VS.* RONALD P. PETERS.

Worcester. January 7, 1999. - February 17, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Sexual conduct, Fresh complaint, Corroborative evidence. *Witness,* Corroboration. *Practice, Criminal,* Assistance of counsel, Instructions to jury. *Constitutional Law,* Assistance of counsel.

Evidence at the trial of certain indictments alleging sexual abuse of a child was sufficient to warrant submission of those indictments to the jury, and the defendant's motion for a required finding of not guilty on those indictments was correctly denied. [23-24]

Discussion of the fresh complaint doctrine. [27-28]

This court stated that, in sexual assault cases, the complainant may testify only to the fact that a fresh complaint was made and to whom, but may not testify on direct examination as to the details of the complaint. [28-31]

At the trial of indictments for sexual abuse of a child, in which no fresh complaint witnesses testified, the complainant was permitted erroneously to corroborate her own testimony by testifying on direct examination to the details of her "fresh complaint" to others. [31]

At the trial of indictments for sexual abuse of a child, in which credibility was the main issue, defense counsel provided ineffective assistance of counsel by failing to object to the complainant's improperly self-corroborating testimony as to the details of her fresh complaint to others, none of whom thereafter testified, or to the judge's instructions on fresh complaint relating to the improperly admitted evidence; where there was no reasonable trial strategy to justify counsel's failing to object and where the defendant thereby lost an available substantial ground of defense, a new trial was required. [31-33]

INDICTMENTS found and returned in the Superior Court Department on July 22, 1994.

The cases were tried before *Elizabeth Butler,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court found the defendant guilty on twenty indictments charging him with the sexual abuse of his stepdaughter.[1] The charges stemmed from accusations by the stepdaughter that he had sexually assaulted her for six years (starting when she was ten years old), when the defendant lived with her and her mother at their various homes in Douglas, Bellingham, and Milford.

Represented by new counsel, the defendant appealed from his convictions to the Appeals Court, asserting that his motion for a required finding of not guilty should have been allowed as to several of the charges and that a new trial was required on the remaining convictions because the complainant was improperly allowed to corroborate herself by fresh complaint testimony in the absence of independent testimony by the fresh complaint witnesses. In its brief to the Appeals Court, the Commonwealth conceded that its proof was insufficient to convict the defendant on four of the indictments, and that, as a consequence, he was entitled to a required finding of not guilty on those charges. The Appeals Court, in an unpublished memorandum and order entered pursuant to that court's rule 1:28, entered judgment for the defendant on the charges on which the Commonwealth had conceded a lack of proof, rejected the defendant's other arguments, and affirmed his remaining convictions. *Commonwealth v. Peters*, 45 Mass. App. Ct. 1101 (1998). We granted the defendant's application for further appellate review. We conclude that his motion for a required finding of not guilty was correctly denied on two of the four Douglas indictments which are still disputed, but that there must be a new trial because of improper fresh complaint testimony and instructions to the jury concerning it.

1. The defendant argues that the complainant's testimony as to two of the four incidents that were asserted to have occurred in Douglas was replete with contradiction, uncertainty, and vacillation, to the point where no rational trier of fact could have found beyond a reasonable doubt that more than two acts of sexual assault occurred in Douglas. We have examined the complainant's testimony. She testified in explicit detail as to two incidents of sexual assault in Douglas, and went on to

---

[1]The defendant's convictions included seven charges of statutory rape, G. L. c. 265, § 23, twelve charges of indecent assault and battery (six on a child under the age of fourteen years, G. L. c. 265, § 13B, and six on a child fourteen years or over, G. L. c. 265, § 13H), and one charge of indecent exposure, G. L. c. 272, § 54.

testify that "after [the] first two incidents," the defendant put "his fingers up my vagina, his hands on my breasts, and touch[ed] my vagina." Inconsistencies in a complainant's testimony will not render it insufficient, see *Commonwealth* v. *Clary*, 388 Mass. 583, 589 (1983), and "[i]t does not matter that some of the evidence could be characterized as equivocal or contradictory." *Commonwealth* v. *Melchionno*, 29 Mass. App. Ct. 939, 940 (1990). The proof as to the third and fourth incidents in Douglas could be found in the testimony quoted above. When considered with the complainant's other testimony about events in Douglas, the evidence was sufficient under the standards set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), to warrant submission of the two Douglas indictments in issue (indictment nos. 94-0047-1 and 94-0047-10) to the jury. The defendant's motion for a required finding of not guilty on these indictments was correctly denied.[2]

2. The background information pertinent to the problem with the fresh complaint evidence is as follows. During jury empanelment, the judge informed the jury that, among other potential witnesses, Patricia Savelli from the Department of Social Services and Marian MacLean, from the Massachusetts State police might be called to testify. The name of Mary Flemming, a guidance counsellor at the complainant's high school was not mentioned as a potential witness. Savelli, MacLean, and Flemming, if called to testify, would have been fresh complaint witnesses. In his opening statement, the prosecutor told the jury that the defendant's alleged sexual abuse continued through the fall of 1993, when the complainant "after speaking to several friends," disclosed what had been happening to her to Mary Flemming, her high school guidance counsellor with whom the complainant had "developed a relationship." The prosecutor went on to state that "thereafter [the complainant] spoke to several people from the Department of Social Services . . . [and] to a trooper from the Massachusetts State police" about the abuse.

The complainant was called as the Commonwealth's first witness, and she testified, on direct examination, in explicit detail, about all the acts of sexual assault and abuse committed by the defendant. When she had completed her description of the

---

[2]As to the other charges on which the sufficiency of its proof is questioned, the Commonwealth has conceded a lack of adequate evidence, and we shall enter judgment on these charges for the defendant.

sexual abuse, and its details, the prosecutor elicited from the complainant that she had told a "couple of kids on [her] soccer team" about the abuse. The prosecutor then went on to ask the complainant about her visits to Flemming, her high school guidance counsellor. The complainant testified that she felt "comfortable in talking" with Flemming, and near the end of November, 1993, told Flemming "some of the details of the things the defendant had done to [her] . . . because [she] was sick of [the defendant's] doing this to [her]." During the testimony, the defendant's trial counsel made a general objection, and he explained to the judge, at the conclusion of the evidence for the day, that the objection to the complainant's testimony of her conversations with Flemming was "on the basis as to whether it was a fresh complaint." After the complainant had completed this aspect of her testimony, the judge gave the jury (without objection) the instruction set forth below.[3]

In his cross-examination of the complainant, the defendant's trial counsel elicited testimony that in November, 1993, the complainant had spoken to Patricia Savelli with the Department of Social Services and told Savelli that the defendant would "stop before penetrating [her] because [she was] usually crying, and he was afraid it would wake up [her] mother"; that she and the defendant had "actual sexual intercourse, penis in the vagina . . . only one time last summer"; and that "the very night before [the complainant's speaking to Savelli, the defendant

---

[3]"In a case where there is an allegation of sexual assault, it is permitted for the alleged victim of the sexual assault to testify that she told somebody about the sexual assault. That's called the doctrine of fresh complaint.

"The fact that she told someone and the details of what she told that person are admissible for your consideration if you have determined two things. First, that [the complaint] was made reasonably soon after the sexual assault, considering all of the circumstances, including the relationship between the alleged victim and the alleged perpetrator and the feelings of the alleged victim concerning the alleged perpetrator, any reasons that she should tell or should not tell. You should consider all of those things, jurors, in deciding whether or not the complaint that was made by this witness to [the guidance counsellor] was reasonably fresh after the incident. Secondly, it needs to be found by you that they were voluntary statements, as opposed to pulled out of her unvoluntarily.

"You may never convict a person on the testimony of the statement that was made outside of court. You may use that statement to the extent that it corroborates or does not corroborate the witness'[s] testimony in court. It's only used to help you in evaluating the credibility of the alleged victim."

had] tried to have sex with [her]," but he had not succeeded because she "struggled with him," and during the struggle, he had "grabbed [her] by the neck."

On redirect examination of the complainant, the prosecutor, over objection by the defendant's trial counsel, further explored what the complainant had told Savelli, and had her repeat some of her testimony on direct examination about her relationship with Flemming. The prosecutor then brought out that the complainant had written a letter to Flemming in which she stated that "every time my mother is out of the house . . . [the defendant] rapes me," and it "happened . . . on more than one occasion." The defendant's trial counsel made no objection as to content to this testimony, and the letter was not offered in evidence.

The Commonwealth's evidence closed with the testimony of the complainant's mother. Neither Flemming nor Savelli was called as a witness.[4] There was no motion made by the defendant's trial counsel to strike any of the complainant's testimony about the details of the complaint as expressed by her. The prosecutor made reference in his closing argument to the complainant's contact with Flemming, with no objection. In addition, the defendant's trial counsel made reference to the complainant's conversations with both Flemming and Savelli in his closing argument. In her final charge to the jury, the judge repeated, in slightly different terms, her earlier instruction on the complainant's fresh complaint testimony, see note 3, *supra*, to which she added the remarks set forth below.[5] There was no objection to the instruction.

The defendant contends that the manner in which the fresh complaint evidence was introduced, and handled by the judge, improperly permitted the complainant to corroborate herself, and, as a consequence, a new trial is required. We agree. We

[4]Neither the Commonwealth nor the defendant's trial counsel elicited testimony from the complainant about her conversations with Marian Mac-Lean of the Massachusetts State police.

[5]"You can only consider [the fresh complaint evidence] to the extent that it corroborates or does not corroborate the alleged victim's testimony in here. If she didn't testify directly to you, we could never allow the guidance counselor to come in and say, 'I got this report from the alleged victim,' and that could never form the basis of any conviction against the defendant. But once the alleged victim has testified directly to you about the sexual assault, then the fresh complaint testimony is admissible for your consideration if you decide that it was made reasonably fresh."

first discuss the law pertaining to fresh complaint evidence and why there was error here, and then state the reasons why a new trial is necessary.

(a) Our fresh complaint doctrine permits an out-of-court complaint seasonably made by the complainant in a sexual assault case to be admitted as part of the prosecution's case-in-chief.[6] Evidence of the fact of the complaint is admissible only to corroborate the complainant's testimony. See *Commonwealth v. Bailey*, 370 Mass. 388, 391-392 (1976), and cases cited. It cannot be used to establish the truth of the complaint itself. See *Commonwealth v. Lavalley*, 410 Mass. 641, 643 (1991). In Massachusetts, unlike most jurisdictions, a fresh complaint witness may testify both to the fact of the complaint and the details of the complaint as expressed by the complainant.[7] See *id.* at 643 & n.4; *Commonwealth v. Bailey, supra.*

In *Commonwealth v. Lavalley, supra* at 646-647 n.7, and in *Commonwealth v. Licata*, 412 Mass. 654, 657-658 (1992), we expressed concern about the fresh complaint doctrine. We noted that the doctrine was based on the outmoded, and arguably invalid, premise that victims of a sexual assault who complained to others were truthful, while victims who did not complain may have remained silent because they had consented to the sexual contact. See *Commonwealth v. Lavalley, supra.* Despite our reservations about the doctrine, we stated in *Commonwealth v. Licata, supra* at 658, that "[w]e cannot ignore the societal tendency to disbelieve sexual assault victims and to presume that [those] victim[s] will make a prompt complaint." We went on to affirm that fresh complaint evidence should remain admissible both as to the fact of the complaint and its details, so that the jury could draw their own conclusions based on the statements. See *id.* at 658-659. We advised judges that they "should be cautious in admitting evidence of a fresh complaint," *id.* at

---

[6]The fresh complaint doctrine is an exception to the usual rule that a prior statement of a witness concerning a material fact that is consistent with the witness's trial testimony may only be admitted on redirect examination in limited circumstances. Those circumstances are described in *Commonwealth v. Bailey*, 370 Mass. 388, 391-392 & n.3 (1976).

[7]The rule in the majority of jurisdictions is that, when the complainant has not been impeached, and when the complaint is not a spontaneous utterance, only the fact of the complaint is admissible in the prosecution's case-in-chief. Many jurisdictions, however, permit admission of evidence of the details of the complaint in certain other circumstances. See *Commonwealth v. Licata*, 412 Mass. 654, 659 n.8 (1992) (describing those circumstances).

660; that they should carefully instruct the jury on the role of fresh complaint evidence when it is admitted and again in the final charge so that the jury do not improperly consider it as substantive evidence, *id.*; and that they should exercise discretion to prevent the needless repetition of details. *Id.*

The reasons why fresh complaint evidence must be handled with care were explained by the Supreme Court of Connecticut in *State* v. *Sullivan*, 244 Conn. 640, 645 (1998), when that court recognized that the fresh complaint doctrine creates "a tension between competing well recognized principles." The court went on to describe the tension, and the manner in which it can be relieved, in these terms: "[The fresh complaint doctrine] remains a powerful weapon in the state's arsenal to secure justice for victims of sexual assaults. It also, however, constitutes a potential threat to the accused's right of confrontation under the sixth amendment to the constitution of the United States [and the analogous provision of the State Constitution]. To resolve this tension, the defendant must be allowed an adequate opportunity to cross-examine [fresh complaint] witnesses. Such cross-examination properly includes questioning the witness not only about the victim's report of the present charge, but also about the victim's prior false statements, to that witness, that tend to undermine the credibility of the victim's present complaint." (Footnote omitted.) *Id.* at 645-646.

These observations confirm the obvious proposition that, while a complainant may testify about the fact that she made a complaint to another about a sexual assault, the person complained to, the fresh complaint witness, must be produced to testify about what the complainant said and to be available for cross-examination. We can find no decision, or other authority, which permits a complainant to engage in self-corroboration.

The Commonwealth refers to *Commonwealth* v. *Bailey, supra,* and *Commonwealth* v. *Scullin*, 44 Mass. App. Ct. 9 (1997), as justifying self-corroboration by a victim of a sexual assault. These decisions do not so hold. In the *Bailey* case, in highlighting the fact that only in rape cases do we admit, in the prosecution's case-in-chief, testimony regarding out-of-court statements that are repetitive of a victim's trial testimony, we said, "[i]n cases of rape, however, testimony reporting statements made by the victim shortly after the attack are universally admitted to corroborate the victim's testimony." *Commonwealth* v. *Bailey, supra* at 392, and cases cited. This statement does not

mean that the "testimony" may be reported by the victim herself, which is made plain by the statement's context, regarding testimony by a police officer regarding the victim's complaint to her; the cases cited, which both included testimony by witnesses other than the victim (see *Commonwealth* v. *Hanger,* 357 Mass. 464, 466 [1970] [police officer testified]; *Commonwealth* v. *Ellis,* 319 Mass. 627, 629 [1946], *S.C.,* 321 Mass. 669 [1947] [mother and police officer testified]); and our subsequent statement that the defendant may use any discrepancies in the corroborating testimony to "discredit the victim." *Commonwealth* v. *Bailey, supra* at 396.

In the *Scullin* case, the Appeals Court examined a charge of ineffective assistance of counsel in the context of a rape conviction. The trial judge had deferred a decision as to whether a friend of the complainant would be allowed to testify about the complaint to her. The friend never testified. See *Commonwealth* v. *Scullin, supra* at 10. In its decision, the Appeals Court sought to determine why defense counsel made no objection to the complainant's testimony detailing her complaint to her friend, when its admissibility was questionable. The court stated, "Such testimony, while not typical fresh complaint evidence (i.e., it was not related by a third party to whom the report was made), nonetheless is evidence of an out-of-court statement corroborating an allegation of rape, and so was admissible here, *if at all,* only under the rubric of fresh complaint" (emphasis added). *Id.* at 11-12. The court then cited four cases that might support an inference that the complainant's testimony was admissible as a fresh complaint, but in all four cases, a fresh complaint witness testified in addition to the victim. See *Commonwealth* v. *Izzo,* 359 Mass. 39, 44 (1971) (victim's mother); *Commonwealth* v. *Ellis, supra* (same); *Commonwealth* v. *Cleary,* 172 Mass. 175, 177 (1898) (same); *Commonwealth* v. *Leroux,* 12 Mass. App. Ct. 886, 887 (1981) (victim's statement as to what she had told another "was cumulative . . . and merely a reiteration of other testimony properly admitted as fresh complaint"). In a footnote, the Appeals Court pointedly stated: "We note also that the Commonwealth does not dispute this characterization of the victim's testimony as fresh complaint." *Commonwealth* v. *Scullin, supra* at 12 n.3. The Appeals Court's statements do not stand for the proposition that the victim's testimony as to the details of her complaint was admissible, especially in light of the fact that the court concluded that defense counsel's failure

to object to the testimony was a deficiency in performance. See *id.* at 11.[8]

We take this opportunity to state the governing principles on the matter. The complainant in a sexual assault case may testify *only* to the fact that a fresh complaint was made and to whom it was made. The complainant should not be allowed to testify about the details of the complaint. Defense counsel may, if he or she chooses, cross-examine the complainant about the details of the complaint. If defense counsel does so, the prosecutor may then go into the details in appropriate redirect examination. Otherwise, testimony as to the details of the complaint should be left to the fresh complaint witness who heard the complaint.

These principles strike a balance between our concerns ʲ ut the fresh complaint doctrine and the fact that we contir · ᴉ adhere to the distinctly minority position that the details complaint can be admitted through the testimony of a ᵎ complaint witness.[9] Judges, therefore, should make sure in fuι cases that these principles are applied. A review of transcripts prior cases reveals that the principles have not always beε consistently followed. We hasten to point out, however, that, even if a complainant has been permitted to testify to the details of a fresh complaint in a past case, the defendant may not have

---

[8]The Commonwealth also points to a statement in J.R. Nolan & B.R. Henry, Criminal Law § 236, at 174 (2d ed. 1988), that, "[b]oth the victim and the person to whom she made the complaint may testify as to the complaint, including all the details of the attack as related by the victim," as meaning that each alone may so testify. However, this treatise cites *Glover* v. *Callahan*, 299 Mass. 55, 58 (1937), in support of this statement, in which the victim's testimony was corroborated by testimony of the victim's mother and a police officer. In that case, we stated that fresh complaint evidence is admissible " 'for the more general purpose of confirming the testimony' of the victim. 'The test is whether . . . her having made the complaint tends to corroborate testimony given' by her at the trial. *Commonwealth* v. *Cleary*, 172 Mass. 175, 176, 177 [1898]." *Glover* v. *Callahan*, *supra* at 57. The case, and thus the statement in the treatise, in no way suggests that a victim may bootstrap her testimony solely with her own account of statements made to others.

[9]It appears that only two States still adhere to the rule that permits testimony regarding the details of a sexual assault complaint, even if such testimony is not otherwise admissible either as a prior consistent statement introduced to rebut a claim of recent fabrication or under the spontaneous utterance exception. See *State* v. *Blohm*, 281 N.W.2d 651 (Minn. 1979); *Johnson* v. *State*, 17 Ohio 593 (1848). The vast majority of States limit fresh complaint evidence to testimony concerning the fact of the complaint; the details of the complaint are not admissible. See *State* v. *Troupe*, 237 Conn. 284, 299 n.14 (1996) (collecting cases on majority view).

incurred prejudice. The testimony as to details, for example, may be cumulative or merely a reiteration of other testimony properly admitted as fresh complaint. See *Commonwealth* v. *Leroux, supra* at 887. There may be other reasons as well that establish lack of any prejudice.

Because the fresh complaint doctrine is not operative until fresh complaint testimony from someone other than the complainant is properly introduced, the manner of self-corroboration in this case was erroneous. The complainant was permitted to testify to the details of the complaint. We now state our reasons for ordering a new trial.

(b) The defendant's trial counsel did not object to the introduction of the complainant's testimony that she told members of her soccer team about the sexual abuse. He did not preserve an adequate objection to the complainant's testimony concerning her communications with Flemming about the abuse. Further, the defendant's trial counsel made no motion to strike that testimony when the Commonwealth rested, and he reiterated the substance of the complainant's conversations with Flemming in his closing argument. The defendant's trial counsel voiced no objection to the judge's instructions to the jury about the fresh complaint testimony.[10] The defendant now argues that his trial counsel provided him with ineffective assistance, and a new trial is required.[11] We conclude, under the State constitutional standards set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974), that the defendant is entitled to the relief he seeks.[12]

(i) The "ordinary fallible lawyer" would have recognized that objections should have been made to the complainant's testimony about the soccer team, and her testimony concerning

---

[10]We do not mention here the complainant's testimony about her complaints to Savelli because the defendant's trial counsel brought out the testimony in his cross-examination of the complainant. For reasons that we shall explain shortly, the handling of the testimony regarding Savelli adds further support to the conclusion that the defendant did not receive effective assistance from his trial counsel.

[11]The Commonwealth makes no response to this claim in its brief. It argues only that the fresh complaint evidence was properly admitted.

[12]Although we analyze the error under the ineffective assistance of counsel standard, the defendant also argues that what occurred created a substantial risk of a miscarriage of justice. These two doctrines, in a case like this, are virtually coextensive, and either could be used to support an order for a new trial. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 652 n.24 (1997).

the substance of her conversations with Flemming. The prosecutor should have given assurances that the fresh complaint witnesses, including Flemming (who was not on the witness list) would be called to testify about the details. Cf. *Commonwealth v. Sugrue*, 34 Mass. App. Ct. 172, 173-175 (1993) (failure of trial counsel to object to testimony of witnesses which exceeded proper limits of fresh complaint testimony constituted ineffective assistance of counsel); *Commonwealth v. Gillette*, 33 Mass. App. Ct. 427, 429-431 (1992) (failure of trial counsel to object to highly damaging fresh complaint testimony that was not sufficiently fresh constituted ineffective assistance of counsel).

The cross-examination of the complainant by the defendant's trial counsel on her contact with Savelli was inept and introduced improper fresh complaint evidence, including details, that the Commonwealth had not offered. The cross-examination opened the door for the prosecutor to show in redirect examination (without proper objection) that the complainant had written a letter to Flemming in which she stated that "every time my mother [was] out of the house . . . [the defendant] rape[d] me." There should have been a motion to strike all of the complainant's fresh complaint testimony at the conclusion of the Commonwealth's case because most of it exceeded proper limits. The motion to strike should have been accompanied by a request for a strong instruction to the jury to disregard the testimony. See *Commonwealth v. Scullin, supra* at 12-13. No such motion or request was made.

The failure by the defendant's trial counsel to object to the judge's instructions to the jury on the role of fresh complaint evidence also fell below what would be expected of reasonably competent counsel. See *Commonwealth v. Sugrue, supra* at 173-175; *Commonwealth v. Gillette, supra* at 429-432. The instructions were flawed in several respects. They gave no definition of the meaning of corroboration. See *Commonwealth v. Scanlon*, 412 Mass. 664, 674 (1992) ("An instruction that [fresh complaint] evidence may be used only to corroborate the complaining witness's testimony, without a definition of the term corroboration, does not alleviate the risk that the jury would use such evidence substantively"). The instructions erroneously told the jury that the complainant's testimony "about the details of what she told [a fresh complaint witness] are admissible." The instructions went on to seriously damage the defendant's case by conveying the erroneous impression that it

did not matter whether Flemming had testified because the jury were free to treat her as though she had, in fact, corroborated the complainant's claim of fresh complaint.[13] The instructions in substance called the jury's attention to erroneously admitted evidence, and to matters not in evidence, creating the risk that the jury would give the matter undue weight.[14] Cf. *Commonwealth* v. *Goss*, 41 Mass. App. Ct. 929, 929-930 & n.2 (1996) (judge's erroneous instruction as to fresh complaint evidence allowed jury to put undue weight on evidence and caused substantial risk of a miscarriage of justice). We can discern no reasonable trial strategy that would explain or justify any of these failures. See *Commonwealth* v. *Scullin, supra* at 14.

(ii) We are satisfied as a result of his trial counsel's action, that the defendant lost an available ground of defense. A considerable amount of inadmissible fresh complaint evidence was placed before the jury under flawed jury instructions. The defendant testified. The thrust of his defense was that the complainant hated him, and that she had fabricated the charges because of her dislike for him and to explain away problems she was having. The complainant was the principal witness for the Commonwealth, and several important parts of her testimony were uncorroborated.[15] Where the case hinged on the issue of credibility, the deficient representation provided by the defendant's trial counsel, and what flowed from it, cast doubt on the validity of the jury's verdicts. See *Commonwealth* v. *Egardo*, 426 Mass. 48, 53-54 (1997); *Commonwealth* v. *Scullin, supra* at 13-14; *Commonwealth* v. *Gillette, supra* at 430-432.

3. The judgments on indictment nos. 94-00471-3, 94-00471-5,

[13]This misimpression occurred when the judge told the jury in her final charge, "If [the complainant] didn't testify directly to you, we could never allow the guidance counselor to come in and say, 'I got his report from the alleged victim.' "

We note that this instruction followed the prosecutor's remarks in his summation concerning Flemming's contact with the complainant, where the prosecutor reminded the jury that, when the complainant eventually decided to complain, she turned to "a trusted person . . . a counselor that she had . . . seen a number of times."

[14]The risk is not speculative. The jury asked during deliberations whether "the statements from DSS or the school counselor [were] available for review?" The judge answered, "No."

[15]The complainant's mother was the only other Commonwealth witness. She supported her daughter's testimony in peripheral respects only.

97-00471-14, and 94-00471-17, on which the Commonwealth concedes a lack of proof are reversed, the verdicts set aside, and judgments are to be entered for the defendant. The judgments on the remaining indictments are reversed, and the verdicts set aside. As to these indictments, there are to be further proceedings in the Superior Court.

*So ordered.*