## COMMONWEALTH *vs.* EDMOND J. PLOUFFE, JR.

No. 99-P-481.

Hampden. December 13, 2000. - September 19, 2001.

Present: RAPOZA, DREBEN, & SMITH, JJ.

*Child Abuse. Constitutional Law,* Assistance of counsel. *Practice, Criminal,*
Assistance of counsel. *Evidence,* Medical record, Credibility of witness,
Prior misconduct, Fresh complaint. *Witness,* Credibility.

At a criminal trial, inconsistencies in a complainant's testimony do not render
that testimony insufficient, and it does not matter that some of the evidence
is contradictory; once sufficient evidence is presented to warrant submis-
sion of the charges to the fact finder, it is for the fact finder alone to
determine what weight will be accorded the evidence. [544-545]

At a criminal trial, the failure of defense counsel to introduce into evidence
counseling records of the victim was not manifestly unreasonable and did
not constitute ineffective assistance of counsel, where the information in
the records did not comport with the defense strategy and there was no
evidence connecting the information in the records to the crime, where
there was no showing that the records would be admissible, and where the
defendant did not move for a new trial to preserve the issue. [545-546]

At a criminal trial, the testimony of a witness on redirect examination concern-
ing the victim's credibility was admissible, where the witness was confused
on cross-examination [546-547]; testimony by the witness that the
defendant's conduct in playing hide and seek as a team with the victim
was "curious" resulted in no prejudicial error or substantial risk of a
miscarriage of justice. [547-548]

At a criminal trial, testimony by the victim regarding bad acts that had oc-
curred prior to the incidents that formed the bases of the indictments was
admissible for the limited purpose of showing a pattern of conduct. [548]

At a criminal trial, the admission of testimony by several witnesses of
complaints made by the victim about the acts of the defendant long after
they allegedly occurred created no substantial risk of a miscarriage of
justice, where an examination of each witness's testimony indicated that
the defendant allowed the stale complaints to be admitted in order to
discredit the victim by showing that the victim had told multiple stories
and had denied the allegations to several people. [548-553]

At a criminal trial, testimony by several witnesses regarding bad acts of the
defendant that occurred prior to the dates of the acts set forth in the indict-
ments was properly admitted, where the testimony not only reflected the
victim's testimony, but was also so lacking in color or detail that it added
nothing to the government's case. [553]

INDICTMENTS found and returned in the Superior Court Department on January 30, 1997.

The cases were tried before *Lawrence B. Wernick,* J.

*Claudia Leis Bolgen* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Found guilty of several sexual offenses after a bench trial,[1] the defendant appeals claiming that he was entitled to a required finding of not guilty, his counsel was ineffective, and there were numerous errors in the admission of evidence, including stale "fresh complaint" evidence. We affirm his convictions.

1. *Sufficiency of evidence.* The substance of the victim's testimony at trial in 1998 — she was then fourteen — was that her family was a neighbor of the Plouffes, the children of each family played together, and, beginning when she was six or seven, in 1990, she and the defendant, then fourteen, played "truth or dare," "hide and seek," and a "game in the closet." During some of these games, the defendant touched and rubbed her on her chest and on her vagina over her clothes. While playing closet games, he often lay on top of her and rubbed her "and stuff." These actions continued on a regular basis.

In the summer of 1993, the defendant lured her into a tent, started kissing and touching her on her chest and vagina, then pulled his pants down and put his penis inside her. The next spring (1994) when she, her brother, and others were to go nightcrawling (for worms), the defendant started to touch and rub her chest and her vagina. In 1995, she once asked the defendant to get her cigarettes, and he asked her if she wanted to play "truth or dare"; she said "no." Thereafter, the defendant did not touch her again. Prior to trial, the victim denied to her brother, the defendant's mother, and others that these events had occurred.

Based on the victim's contradictory accounts and on alleged

---

[1]The defendant was charged with one count of rape of a child and five counts of indecent assault and battery of a child. He was found not guilty of rape of a child, but was found guilty of the lesser included offense of indecent assault and battery of a child, and guilty of the remaining five counts of indecent assault and battery of a child.

inconsistencies in her trial testimony, the defendant argues that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. As pointed out in *Commonwealth* v. *Peters*, 429 Mass. 22, 24 (1999), however, "[i]nconsistencies in a complainant's testimony will not render it insufficient," and it does not matter that some of the evidence is contradictory. Once, as here, sufficient evidence is presented to warrant submission of the charges to the fact finder under the standards set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), it is for the fact finder alone to determine what weight will be accorded the evidence. *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991).

2. *Ineffective assistance of counsel.* Prior to trial, defense counsel sought production of the victim's counseling records and, following review by a judge of the Superior Court (not the trial judge), portions of the records were made available to him. Although they were brought to court at his request, counsel did not seek to have them admitted in evidence. Indeed, when asked by the judge whether it would be necessary to talk about the records, counsel answered, "No."

The defendant, in his brief, states that the records reveal that in 1993 the victim's father was convicted of molesting a girlfriend of the victim's older sister, Sara.[2] He claims their admission in evidence would have created a reasonable doubt as to the defendant's guilt as they raise the possibility that the victim had been sexually abused by her father but wanted to protect him. This possibility explains why she sought counseling, and why she insisted that no one reveal that she had named the defendant as the perpetrator.

The first difficulty with this argument is that the defendant did not follow "the recommended course of making a motion for a new trial accompanied by affidavits, with the potential for an evidentiary hearing and findings," preferably by the judge who presided at trial. *Commonwealth* v. *McCormick*, 48 Mass.

---

[2]The defendant filed a motion in this court to release impounded material (the records) and claims they are on file in the Superior Court clerk's office. We decline to allow the motion or to look at the records. Any examination bearing on the claim of ineffectiveness of counsel should, in the first instance, take place in the trial court.

App. Ct. 106, 107 (1999).[3] This is particularly important where, as here, the challenged conduct may have been a reasoned tactical decision. *Id.* at 107-108. Not only was counsel's action deliberate, but it, indeed, appears to have been a strategic judgment. The thrust of the defense was that the victim had fabricated the story as evidenced by her lengthy failure to tell anyone that anything had occurred, her history of not always telling the truth, and her denial of the allegations on several occasions. The record does not suggest that the victim's father had much contact with her. He was a long haul truck driver, divorced from her mother, and he did not live with the victim's family. In the absence of any evidence connecting the victim's father to the abuse, and in the absence of a showing that the counseling records were probably admissible, see note 3, *supra*; see also *Commonwealth* v. *Nicholas*, 15 Mass. App. Ct. 354, 356 (1983), we cannot, on the record before us, find counsel's failure to introduce the records to be "manifestly unreasonable," the standard by which we review a challenge to a tactical decision of counsel. *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991). *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 391-392 (1997).

3. *Admissibility of evidence.* (a) The defendant contends that the testimony of the victim's brother concerning his sister's credibility, admitted over objection on redirect examination, "violated the long-standing rule that witnesses may not offer their opinions regarding the credibility of another witness." *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991). The scope of redirect examination is a matter within the discretion of the trial judge, and "[i]t is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Olszewski*, 416 Mass. 707, 718 (1993), cert. denied, 513 U.S. 835 (1994), quoting from *Commonwealth* v. *Mandeville*, 386 Mass. 393,

---

[3]Moreover, it is not clear that the records would be admissible. While a defendant may introduce evidence that another recently committed a similar crime by similar methods, such evidence may only be admitted when the acts of the other are so closely connected in time and method as to cast doubt on the defendant as the perpetrator. *Commonwealth* v. *Bregoli*, 431 Mass. 265, 274 (2000). Whether the evidence meets this test is a matter within the discretion of the trial judge. *Ibid.*

400 (1982). That principle applies here. The victim's brother (whose best friend was the defendant's brother) stated on cross-examination that he first heard of his sister's allegations when he was at the Plouffe residence, that when he went home, he confronted his sister, and she denied the allegations. At his request, she called the defendant's mother and again denied that the defendant did anything to her. After eliciting an admission from the witness that his sister had lied to him on prior occasions, but not on serious matters like the present, defense counsel asked:

> *Q.*: "Well, then [the victim] would be telling the truth when she said —
>
> *A.*: "Definitely."
>
> *Q.*: "— it didn't happen?"
>
> *A.*: "Definitely."

On redirect examination, the witness indicated he had been confused by the question and had intended to state that he believed her allegations against the defendant. The allowance of that testimony, set forth in the margin,[4] was not an abuse of discretion in view of the questioning on cross-examination by defense counsel.

(b) There is no merit to the defendant's argument that it was improper for the brother to testify that it was unusual or "curi-

---

[4]On redirect, the witness was asked the following by the prosecutor:

*Q.*: "You just answered . . . that if [the victim] told you it didn't happen, then that would be the truth, right?"

*A.*: "Yah."

*Q.*: "Did you come to believe that what [the victim] said was the truth?"

*A.*: "Yah."

Objection made and overruled.

*Q.*: "Were you confused at all by the wording of [defense counsel's] question?"

*A.*: "Most definitely."

ous" for two players to play hide and seek as a team. Not only was there no objection to the testimony, but, contrary to the defendant's contention, the statements were more factual in nature than the opinion of the witness criticized in *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971-972 (1995), that the defendant's conduct was "suspicious." In any event, there was no prejudicial error, let alone a substantial risk of a miscarriage of justice. See *ibid.*

(c) There is also no merit to the defendant's contention that it was error to allow the victim to testify to bad acts of indecent touching, which had occurred prior to the incidents that formed the bases of the indictments. The judge, who was also the fact finder, admitted such evidence for a proper and limited purpose, that is, to show a pattern of conduct. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986); *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. 810, 817 (1998).

(d) At first blush, the defendant's claim that "[s]ix witnesses testified that [the victim] had told them of the indecent touching two and three years after the alleged inciden[t]s" and that "[t]he remaining witness[5] was told at an undetermined time," in effect a claim of six stale complaint witnesses, is troublesome. The defendant names four of these witnesses,[6] and although he does not specify the others, the only other Commonwealth witnesses were the victim herself, her mother, her brother, and her sister. The record discloses that the victim's sister and brother testified to hearing a complaint only on cross-examination.

Based on the relevant portions of each person's testimony, we conclude that its admission without objection was a deliberate tactical decision by counsel to show that the disclosures were indeed late and not to be believed. See *Commonwealth* v. *Fanara*, 47 Mass. App. Ct. 560, 564-565 (1999). In any event, there was here no substantial risk of a miscarriage of justice,[7] even though we assume that all the complaints (except that of

---

[5]That witness presumably is Melissa Goulet, as the victim did not know when she told Melissa, although, as indicated, *infra*, Melissa testified as to when she was told by the victim.

[6]Melissa Tefft, Dr. Miller, Detective Nowak, and Melissa Goulet.

[7]This is the applicable standard of review where there is no objection at trial.

Melissa Goulet, see *infra*, subparagraph [ii]) were too late to be considered "fresh." We turn to the testimony of each witness.

(i) In his claim that the fresh complaint principles were violated, the defendant does not refer to the victim's testimony. A brief summary of what, when, and whom she told (without objection) bears on the defendant's tactical decisions at trial.

The victim acknowledged that she told no one immediately about the sexual abuse after the rape in the tent or after the nightcrawling incident. She claimed that after the 1995 cigarette shopping incident, she told Scott Rockwood, a boy she was then dating, "about what's been going on, what's been happening to me." That the Commonwealth did not produce Rockwood — the prosecutor claimed she could not find him — created no prejudice. See *Commonwealth* v. *Peters*, 429 Mass. 22, 27-29 (1999) (complainant may not corroborate herself, Commonwealth must produce the person to whom she allegedly complained). Rockwood appeared as a witness for the defense and testified that while he had talked to the victim in 1995, she never indicated "that she had been molested or assaulted or raped" by the defendant. Rockwood also denied dating the victim.

When asked in whom else she had confided, the victim replied that her counselor, Melissa Tefft, was the first adult, and that she had also told Melissa Goulet, her best friend. She set forth in detail what she told Tefft, details which mirrored the victim's own account. She also told Tefft that she didn't want her mother to know about the events.

The victim did not remember when or about what time she told her friend Melissa Goulet, and when asked specifically what she had told Melissa, she said "like, how he would touch me and play games with me and do that." She was not sure that she told her about the incident in the tent. When asked about others she had told, she mentioned Dr. Miller, Detective Nowak, and Jen Kendall,[8] a relative of the Plouffes, who informed her mother who, in turn, notified the defendant's mother.

---

[8]Although Kendall never was produced at trial, see *Commonwealth* v. *Peters*, 429 Mass. at 28, there was no harm in the mention at trial of this late disclosure by the victim which led to the awareness by the Plouffes of the allegations.

On cross-examination of the victim, counsel repeatedly elicited answers showing the close friendship and the ongoing relationship of the two families until 1996, the victim's denial of the allegations, and her failure to tell persons close to her of the abuse, and the length of time during which she told no one. Although counsel could have objected to the victim's recounting the details of what she told Tefft, *Commonwealth* v. *Peters*, 429 Mass. at 30 ("complainant should not be allowed to testify about the details of the complaint"), he could well have thought that repetition of the story, which was almost always accompanied by a persistent attempt by the victim to have it go no further, was in the defendant's interest,[9] particularly where the victim was also shown to have denied it to numerous persons. (Additional denials were brought out in the defendant's case.)

(ii) The first person the victim told of the incidents was her best friend, Melissa Goulet, a second cousin of the defendant. While, as indicated earlier, the victim could not recall when she told Melissa Goulet about the games and touching, Goulet testified that she was told by the victim "five years ago" (in 1993) that "she was molested or possibly raped" in a tent. Goulet's testimony was not stale if, as she testified, the victim told her about the events five years earlier, that is, in 1993, within a short time of their occurrence.

(iii) Melissa Tefft, the victim's therapist, met with the victim and her mother on March 29, 1996. The judge specifically asked counsel for the defendant whether he had any objection to her relating what the victim told her. He answered, "No." Tefft testified that the victim "stated that she had been touched by her neighbor on her breast many times from the age of 5 to 10, and that he had also tried to rape her when she was 10."

Tefft related how anxious the victim was that the matter not be disclosed to others, and how upset she was when Tefft told her that her mother had to be informed. The victim insisted that

---

[9] We note that in *Commonwealth* v. *Peters*, 429 Mass. at 30-31, which was decided after the trial in this case, the court pointed out that its principles are to be applied "in future cases" and "hasten[ed] to point out . . . that, even if a complainant has been permitted to testify to the details of a fresh complaint in a past case, the defendant may not have incurred prejudice."

if Tefft divulged the matter, she would withdraw from treatment and would deny her previous story. Two sessions later, however, she agreed to have Tefft tell her mother.

Defense counsel's willingness to have Tefft testify was clearly a reflection of his tactical decision to lay stress on the fact that the victim wanted to suppress the story she had told the counselor. As indicated in his closing argument, he sought to undercut the victim's credibility by arguing that she told multiple stories, and although she tried to suppress the untrue story she had told the counselor, she was unsuccessful; the story which she had denied to numerous persons had escaped her control.

(iv) Dr. Miller, to whom the victim was referred by her physician for a genital examination, examined the victim on January 9, 1997, to see if there were any injuries. She also interviewed the victim to talk with her as to why she was there, what was troubling her, and what the doctor was planning in terms of a physical examination. During the course of the interview, the doctor testified, "She had told me that she had been touched inappropriately by a neighborhood person over the last several years. . . . She said it had occurred from the time she was . . . in about first grade until a year prior to the time that I saw her."

On cross-examination defense counsel again stressed the lateness of the account by asking if the doctor would be surprised if the attempt at penetration had occurred three and one-half years earlier. Counsel also brought out extremely favorable testimony to the defendant on the rape charge. Asked if the victim had ever indicated that penetration had succeeded, he elicited the response that "she did not indicate that to me."

Dr. Miller's direct testimony was not introduced as fresh complaint testimony but rather to explain what was relayed to her in terms of her diagnosis and the purpose of her examination. She did not identify the perpetrator other than to say he was a neighbor. Compare *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 438 n.5 (1994). Indeed, her testimony about penetration no doubt contributed to the defendant's acquittal of the rape charge.

(v) The victim's mother testified that the first she heard of the abuse was when Melissa Tefft told her that the victim "was molested by my neighbor, Eddie Plouffe." Although she was

told in May, 1996, it was not until the Plouffes accused her daughter of slandering their son in September that she accompanied her daughter to the police station.

On cross-examination, counsel pointedly noted the delay and brought out that the mother found the victim less than truthful on, for example, disciplinary issues, and also elicited that she was unaware that her daughter smoked or dated, or that she had denied the allegations to the defendant's mother. Counsel's acquiescence in the admission of the mother's testimony as to what and when she was told again appears tactical in view of the time interval before she reported the matter to the authorities. By stressing the victim's lack of candor known to her mother, counsel implied that the long delay showed disbelief by the mother in her daughter's account.

(vi) Indeed, when the next witness to testify, the victim's older sister, Sara, was on the stand, counsel again emphasized the lateness of the complaints in an effort to show that it was likely that the events were untrue. In cross-examination he elicited how friendly the two families were and how they played together almost daily between 1991 and 1996, and that although Sara was close to her sister, until the matter became known, the victim "never said anything to [Sara] about anything happening with Eddie Plouffe."

(vii) The police detective, Jeanne Nowak, who became involved in the investigation of the defendant, testified that the victim came to the station to report the incidents on September 12, 1996, with her mother. The only mention of the facts on direct examination was: "She was supposedly sexually assaulted."[10]

In sum, an examination of the testimony of each witness (the victim's brother's testimony was discussed earlier, part 3[a], *supra*, showing that he first learned of the allegations from the Plouffes) indicates that the claims of improper admission of stale

---

[10]On cross-examination, defense counsel elicited the fact that the police originally sought a complaint for assault with intent to rape and attempted to have the detective acknowledge that she had no information that penetration had taken place. Instead, the detective testified that she was not aware of the exact definition of penetration. On redirect she testified that, after learning that the definition did not require entering of the vaginal canal, she was satisfied that there had been sufficient penetration.

complaints are at odds with the defendant's strategy at trial and are the product of hindsight.

(e) The defendant's additional claim that he was prejudiced by testimony of the fresh complaint witnesses which referred to bad acts that occurred prior to the dates of the acts set forth in the indictments is without merit. The testimony not only reflected what the victim properly testified to, see part 3(c), *supra*, but was also "so lacking in color or detail that it added next to nothing to the government's case." *Commonwealth* v. *Onouha*, 46 Mass. App. Ct. 904, 905 (1998), quoting from *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 222 (1991).

*Judgments affirmed.*