COMMONWEALTH *vs.* WILLIAM H. WASHBURN.

No. 01-P-309.

Plymouth. March 15, 2002. - July 23, 2002.

Present: JACOBS, CYPHER, & KANTROWITZ, JJ.

*Statute,* Construction. *Obscenity,* Dissemination of obscene matter to minor. *Evidence,* Fresh complaint. *Grand Jury. Indecent Assault and Battery. Words,* "Matter."

This court concluded that computer images are included within the definition of "matter" in G. L. c. 272, § 28, as within either the broad category of "visual representation" or the term "pictures," and could form a basis for prosecution under § 28 for disseminating "matter" harmful to a minor. [495-496]

At the trial of indictments charging indecent assault and battery and dissemination of matter harmful to a minor, the judge did not err in admitting fresh complaint testimony of the minor's parents as to the details their son had told them, corroborating the details he had told the jury concerning the incident. [496-498]

There was no merit to a criminal defendant's claim that grand jury proceedings were impaired because the investigators who examined a computer for the Commonwealth could not determine the dates on which certain alleged pornographic images were made or viewed, where there was no attempt to mislead the grand jury. [498]

INDICTMENTS found and returned in the Superior Court Department on June 11, 1999.

A motion to dismiss was heard by *Raymond J. Brassard,* J., and the cases were tried before *Richard J. Chin,* J.

*Robert O. Berger, III,* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. After a jury trial, the defendant was convicted of indecent assault and battery, G. L. c. 265, § 13H, and of dissemination of matter harmful to a minor, G. L. c. 272, § 28. The defendant appeals, claiming that (1) he was deprived of a

fair trial by the use of improper fresh complaint testimony; (2) the convictions were defective because the applicable statutes do not expressly include "depiction by computer" in the definition of "matter"; and (3) the grand jury indictments were improper because the Commonwealth presented distorted evidence as to the time and date of the incident. We affirm.

*Facts.* The jury could have found the following facts. The complainant, Jason (a pseudonym), a 4'10" fifteen year old boy, attended Rockland High School. The defendant had been his math teacher in the prior year and the two had developed a close relationship, which continued into the following school year.[1]

After Jason missed school to go to aviation camp, the defendant called him at home, offering to help with his homework during the April school break. On April 20, 1999, Jason's father brought him to school, where Jason and the defendant worked on his math assignments. At the defendant's suggestion to use the Internet, Jason sat on a chair in front of a computer, the defendant crouching beside him, his hand on Jason's shoulder. When the computer came on, the word search on the screen said "porn." The defendant giggled and said, " '[L]et's go to this.' " He clicked the mouse, which brought up pictures depicting naked adult women "on top of each other." Jason testified that he was shocked that the defendant showed him these pictures. With the pictures on the screen, the defendant rubbed Jason's stomach, first over, then underneath his shirt, and then put his hand inside Jason's pants and made a "groping motion to [his] penis." Jason pushed the defendant's hand away, saying that he had to go home and that his father was picking him up (which was untrue). Going to the window, ostensibly to look for Jason's father's car, which was not there, the defendant volunteered to drive him home, and Jason accepted.

Arriving home, Jason entered, locked the door, began to cry,

---

[1]During that school year, until the incident which gave rise to these indictments, the defendant continued to help Jason with his math homework, gave him his home telephone number and address, allowed him to store his books in his classroom as Jason did not have a locker, gave him $100 for Christmas and a cake on his birthday, and occasionally lent him lunch money.

and paged his father to tell him what had happened. His father came home immediately, and the two discussed the incident; Jason was scared, crying, and mad. Jason's father called his wife, who also immediately came home and spoke with Jason. The police were summoned. After the parties, including the defendant, were questioned, the defendant was arrested. Continuing their investigation, the police, with the consent of the school authorities, seized the computer from the defendant's classroom. After obtaining a search warrant, the police searched the contents of the computer and discovered pornographic image files (indicating that pornography was saved on the hard drive after being viewed on the internet sites), as well as history files indicating that pornographic websites had been accessed. Because the internal clock on the computer was malfunctioning, computer analysts could not ascertain when the images had last been accessed.

At trial, Jason testified, followed by his parents. In addition, the school janitor testified that, on the date of the incident, as he unlocked the defendant's classroom door, intending to enter and change a vent in the classroom, the defendant met him at the door. After briefly explaining the maintenance to be done, the janitor said he would come back another time. The janitor noticed a boy at the computer station. Police officers and computer experts testified about the status of the computer and the files.

Testifying in his own defense, the defendant denied the allegations, claiming that he had reprimanded Jason for his poor grades and told him he could no longer use his computer. Other students testified that they had received gifts from the defendant and used his classroom computer, with no untoward conduct.

*Matter harmful to a minor.* The defendant argues that his conviction under G. L. c. 272, § 28, should be reversed because the provision of the statute defining "matter" does not expressly include computer images.[2]

General Laws c. 278, § 28, as appearing in St. 1982, c. 603, § 2, provides: "Whoever disseminates to a minor any *matter*

---

[2]At the time of this decision, a bill is pending in the Legislature that would insert "depiction by computer" into G. L. c. 272, § 31. Our decision relies, of course, on the current version of the statute.

harmful to minors, as defined in section thirty-one, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors, shall be punished . . ." (emphasis supplied). "Matter" is defined in G. L. c. 272, § 31 (as appearing in St. 1974, c. 430, § 12), as "any printed material, *visual representation*, live performance or sound recording including but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, *pictures*, photographs, figures, statues, plays, dances" (emphases supplied).

Criminal statutes must define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. *Commonwealth* v. *O'Keefe*, 48 Mass. App. Ct. 566, 567 (2000). When a term is not defined in a statute, we look to the "usual and accepted meaning" of the term. *Ibid.* The computer images at issue here fit comfortably within the broad category of "visual representation" as well as the term "pictures."[3,4]

*Fresh complaint.* The defendant argues that Jason did not testify about what he reported to his parents in his fresh complaint and that their testimony, therefore, enlarged the

---

[3]The defendant argues that because "depiction by computer" is specifically included in G. L. c. 272, § 29C (inserted by St. 1997, c. 181, § 2) (prohibiting the purchase or possession of "a negative, slide, book, magazine, film, videotape, photograph, or other similar visual reproduction, or depiction by computer" of a child in actual or simulated sexual conduct), but is not specifically included in § 31 or § 28, then §§ 28 and 31 do not apply to computer images. We disagree. Not only does "computer image" fit easily within the term "visual representation" and the term "picture," but also in G. L. c. 272, § 29C, the use of the term "depiction by computer" adds a meaning unnecessary in the instant case. See *Commonwealth* v. *Hinds*, 437 Mass. 54, 62-64 (2002), which holds that the effect of inclusion of "depiction by computer" in § 29C is to make criminal not only the knowing possession of tangible visible items but also the knowing possession of an unopened file on the hard drive of a computer, that is, images stored in the form of data (in order, the opinion points out, to address the unique issues presented by computers including the fact that stored data can be speedily transferred into graphic images). That issue has no bearing on the instant case, and the lack of inclusion of the term in §§ 28 and 31 does not change the result here.

[4]As the dissemination indictment against the defendant was not defective, there is no need to consider his contingent claim that his conviction of indecent assault and battery should also be reversed.

complainant's statements and provided substantive evidence of the crime. This argument is both factually and legally incorrect.

On direct examination, a complainant may testify only to the fact that he or she made a fresh complaint and to whom it was made, not about the details of the complaint; nor may the complainant self-corroborate. *Commonwealth* v. *Peters*, 429 Mass. 22, 28-31 (1999). A fresh complaint witness, on the other hand, may testify to both the fact of the complaint and the details of the complaint as expressed by the complainant, *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 868 (2001) (citing *Commonwealth* v. *Peters*, *supra* at 30), so long as the fresh complaint evidence is not used to fill in gaps in the prosecution's case. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). Here, it was proper for the parents to testify as to the details their son had told them, corroborating the details he had told the jury concerning the incident. *Commonwealth* v. *Peters*, 429 Mass. at 27.

The defendant is permitted, on cross-examination, to explore the details of the fresh complaint with the complainant. "If defense counsel does so, the prosecutor may then go into the details in appropriate redirect examination. Otherwise, testimony as to the details of the complaint should be left to the fresh complaint witness who heard the complaint." *Id.* at 30. Here, defense counsel, as permitted, cross-examined Jason about what details he had told his father and mother regarding the incident; on redirect examination, the prosecutor, as also permitted, further explored this area with Jason. This was the proper course for eliciting the fresh complaint details from the complainant.

The defendant asserts that the testimony of two fresh complaint witnesses constituted undue piling-on which impermissibly bolstered the complainant's credibility. There is no per se rule as to how many fresh complaint witnesses may testify. *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995). The testimony of the two fresh complaint witnesses was relatively brief and did not exceed the scope of Jason's testimony. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 645

(1991). There was no error in its admission.[5]

*Grand jury indictment.* The defendant argues that his motion to dismiss the two indictments should have been allowed. He claims the grand jury proceedings were impaired because the investigators who examined the computer for the Commonwealth could not determine the dates on which the pornographic images were made or viewed.

There was nothing unfair or misleading about the testimony before the grand jury concerning the computer images. A computer expert admitted to the grand jurors that the date and time the images were viewed could not be ascertained with specificity, due to technical problems with the computer, and responded accurately to a grand juror's questions regarding the computer's malfunctioning clock. There was no attempt to mislead the grand jury and no error in denying the motion to dismiss. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986). We note also that the date and time of the occurrence are not elements of the crime of indecent assault and battery. See *Commonwealth* v. *Sineiro*, 432 Mass. 735, 737-738 (2000) (indictments which did not state the date and time were not defective).

*Judgments affirmed.*

---

[5]The defendant also argues that the parents' testimony as to statements made between them about the matter was prejudicial hearsay. Assuming, without deciding, that these statements were unobjected-to hearsay and were erroneously admitted, we conclude that their admission did not create a substantial risk of a miscarriage of justice because they were merely cumulative of other evidence.