NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1540

COMMONWEALTH

vs.

CORY B. ALVAREZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant appeals from his conviction on an indictment charging aggravated rape of a child (by age difference). We affirm.

We disagree with the defendant's contention that the Commonwealth presented insufficient evidence of penetration to satisfy the element of "sexual intercourse" under G. L. c. 265, § 23A. Viewing the evidence in a light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), jurors could infer penetration from the following: (1) the victim testified that the defendant removed her clothes in his room, was "on my body" on the bed, and "raped" her; (2) she further testified that after leaving the defendant's room she

showered and changed clothes; (3) an examining nurse testified that the victim reported "penile/vaginal penetration" and interior bleeding, received medications as prophylaxes, underwent a swabbing of her genital opening including the labia, and reported pain from the swabbing of the inner part of her labia; and (4) a forensic scientist testified that the swabs contained the defendant's deoxyribonucleic acid (DNA) profile.

We are disinclined to say that a rape victim must testify using particular words and note that the victim's testimony that she was "raped" allows for a reasonable inference of penetration. See Commonwealth v. Sherman, 451 Mass. 332, 336, 337 (2008) (rape not merely legal term, but "act whose widely known common meaning implies sexual intercourse"); Commonwealth v. Santos, 100 Mass. App. Ct. 1, 6 (2021) (conviction may be supported by "victim's testimony alone"). Even in the absence of victim testimony naming specific body parts, "[p]enetration can be inferred from circumstantial evidence," Commonwealth v. Fowler, 431 Mass. 30, 33 (2000), as has been presented here through the victim's immediate effort to shower and change clothes, the examination where she disclosed "penile/vaginal penetration" with internal bleeding and received concomitant medical care, and the presence of the defendant's DNA around her genital opening including the labia. See Commonwealth v.

2

Centeno, 87 Mass. App. Ct. 564, 567 (2015) (penetration may be established by evidence that the defendant "touched or came into contact with the victim's vagina, vulva, or labia").  Neither contradictory evidence nor competing inferences render the evidence insufficient.  Once evidence is presented to permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, Latimore, 378 Mass. at 677, "it is for the fact finder alone to determine what weight will be accorded the evidence."  Commonwealth v. Plouffe, 52 Mass. App. Ct. 543, 545 (2001).

Contrary to the defendant's next claim, the judge did not abuse his discretion, Commonwealth v. Aviles, 461 Mass. 60, 73 (2011), by admitting, over objection, first complaint testimony of the victim's father that did not mirror the victim's testimony.  The first complaint doctrine "permit[s] some discrepancy" between the testimony of the victim and the first complaint witness and does not require "complete congruence."  Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 586 (2013).  First complaint testimony "need not replicate precisely the victim's own testimony," and some inconsistency is expected and will often aid a jury in evaluating the evidence.  Commonwealth v. King, 445 Mass. 217, 235 (2005).  Here, the father testified to a report that the defendant "forced her to go into the room,"

3

"removed her clothes," "sucked on her breast," and "had sex with her," while the victim testified that the defendant "told me to go" to the room, "had me remove my clothes", and "did something bad, like rape me." The victim also gestured toward her breast when testifying without stating what the defendant did. These discrepancies are not unexpected, particularly where the teenage victim presented, as the judge noted, as "limited," and where the victim candidly acknowledged that she did not "know the parts of [her] body." Given the victim's evident limitations and the judge's repeated instructions on the narrow, corroborative boundaries of first complaint testimony, jurors could fairly determine "whether the [first] complaint testimony ultimately support[ed]" the victim's testimony. King, 445 Mass. at 235. Thus, we discern no abuse of discretion by the judge.

Testimony of the nurse and the admission of the victim's medical examination records did not amount to an error creating a "substantial risk of a miscarriage of justice." Commonwealth v. Freeman, 352 Mass. 556, 564 (1967). The nurse properly testified to the victim's statements that were made for the purpose of diagnosis and treatment. See Commonwealth v. Comtois, 399 Mass. 668, 675 (1987) (physician properly testified that rape victims "described what they believed to have happened"). Unlike in Commonwealth v. Rodriguez, 484 Mass. 677,

4

682 (2020), on which the defendant relies, the victim's statements here were not "for purely legal purposes" but for diagnosis and treatment. Likewise, there was no error in admitting the form the nurse prepared that also reflected the victim's statements for the purpose of diagnosis and treatment. See Commonwealth v. Dargon, 457 Mass. 387, 394 (2010) (form prepared by nurse properly admitted even if it had some bearing on question of liability). See also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 312 n.2 (2009) (right to confront witnesses not implicated by "medical reports created for treatment purposes"). Contrast Commonwealth v. Jones, 472 Mass. 707, 711 (2015) (constitutional right to confront witnesses barred evidence of rape kit where nurse who collected evidence did not testify).

For the first time, the defendant challenges the DNA testimony offered by the forensic scientist as "inadmissible under Daubert-Lanigan." A challenge to the reliability of evidence under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Commonwealth v. Lanigan, 419 Mass. 15 (1994), however, cannot be made for the first time on appeal. Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 694 (2015). "Because this claim is being raised for the first time on appeal, it is waived." Id. Also, in the absence of a fully

developed evidentiary record necessary for a Daubert-Lanigan analysis, the defendant has not shown that there was any error, let alone one creating a substantial risk of a miscarriage of justice.

Finally, we discern no errors from the prosecutor's closing argument. The prosecutor did not refer to first complaint testimony for an improper purpose and simply asked jurors to "consider those statements that she made on that day in light of what she told you here in her testimony." Also, the prosecutor did not misstate the DNA evidence. The forensic scientist testified that "Fraction 2 would be the potential sperm cells" and that the defendant's DNA was "included" in this sample. The prosecutor argued, "And this defendant's profile was included in that second fraction, Fraction 2, which she told you was the sperm fraction." The prosecutor essentially asked jurors to infer that the defendant's DNA came from sperm cells and to infer that his "penis touched her vagina" -- inferences that were possible but not inescapable based on the testimony that the sample tested contained "potential" sperm cells. The argument did not misstate the evidence, see Commonwealth v. Niemic, 483 Mass. 571, 592 (2019) ("prosecutor may argue reasonable inferences to be drawn from the evidence"), and the judge repeatedly instructed jurors, during the prosecutor's

argument and in the final charge, that the arguments do not constitute evidence.

<u>Judgment affirmed</u>.

By the Court (Sacks,
Hodgens & Toone, JJ.[1]),

Clerk

Entered:  June 11, 2026.

---

[1] The panelists are listed in order of seniority.